# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James and Lorie Jensen, as parents, guardians and next friends of Bradley J. Jensen; James Brinker and Darren Allen, as parents, guardians and next friends of Thomas M. Allbrink; Elizabeth Jacobs, as parent, guardian and next friend of Jason R. Jacobs; and others similarly situated, | Civil No. 09-1775 (DWF/FLN) |

Plaintiffs,

v.                                          **ORDER AND MEMORANDUM**

Minnesota Department of Human Services, an agency of the State of Minnesota; Director, Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Clinical Director, the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Douglas Bratvold, individually, and as Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Scott TenNapel, individually and as Clinical Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; and State of Minnesota,

Defendants.

---

M. Ann Mullin, Esq., Mark R. Azman, Esq., and Shamus P. O'Meara, Esq., Johnson & Condon, PA, counsel for Plaintiffs.

P. Kenneth Kohnstamm and Steven H. Alpert, Assistant Attorneys General, Minnesota
Attorney General's Office, counsel for State Defendants.

Samuel D. Orbovich, Esq., and Christopher A. Stafford, Esq., Fredrikson & Byron, PA,
counsel for Defendant Scott TenNapel.

---

The parties reached a Stipulated Class Action Settlement Agreement ("Settlement

Agreement") in this case in June 2011.  (Doc. No. 104.)  On December 5, 2011, the Court

entered a Final Approval Order for Stipulated Class Action Settlement Agreement

("December 5 Order").  (Doc. No. 136.)  Paragraph 5 of the December 5 Order states, in

pertinent part:

> 5.     By separate Order, the Court shall determine how the reduced
> Settlement Amount, minus attorneys' fees and costs awarded below, shall
> be apportioned amongst Plaintiffs and those Class Members who submitted
> Claim Forms, and further determine how any remaining amounts shall be
> distributed in accordance with the terms of the Agreement.

(*Id.* ¶ 5.)  The Court entered a separate Order, referred to in paragraph 5 of the

December 5 Order, on January 30, 2012 ("January 30 Order").  (Doc. No. 140.)  The

January 30 Order noted that, for Class Members receiving $3,000 or more, the Settlement

Agreement (section XIV ¶ F) and Final Approval Order require that, before funds are

released, "the Court will ascertain whether the class member or legal guardian has taken

appropriate steps to safeguard eligibility for government benefits satisfactory to the Court

including consideration of financial accounting and estate or trust planning issues

involved."  (Doc. No. 140 at 6 (footnote omitted).)  The Court emphasized in a footnote

in the January 30 Order that the appropriate steps were important to assure that the funds

would be "used for their intended purpose—solely for the benefit of the Class Member."

2

(*Id.* at n.4.)  And, of course, consistent with the Settlement Agreement, the intent of the order of the Court was to ensure that the funds would be spent to improve the quality of life of each Class Member, as discussed in the memorandum attached hereto.

The Court has thus far received letters pertaining to about 30 of the approximately 190 Class Members in which the legal guardians and conservators have explained the steps that they believe they have taken to safeguard Class Member funds and eligibility. Pursuant to the Settlement Agreement and the January 30 Order, the Court agreed to review the submitted information and then contact each Class Member or legal guardian to advise whether the safeguards described are satisfactory or whether additional information is required.  (*Id.* at 6-7.)

Based upon the Court's receipt of the aforementioned letters from legal guardians and the concerns raised by those letters, the Court having again reviewed the Settlement Agreement of the parties and the Court's prior Orders, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

### 1.    Use of Funds.

The Court respectfully directs that the legal guardians or conservators for the Class Members communicate to each Class Member his or her entitlement to settlement funds. This communication shall include a discussion with the Class Member of those recreational activities and items that would add to the quality of life of the Class Member in order to respect and honor the interests and preferences of each Class Member.

As intended by the Settlement Agreement, the settlement funds shall not be used for any residential costs of care.  If a portion of the settlement funds is to be utilized for a prepaid funeral or burial plot, an equivalent amount of the funds shall be utilized to improve the quality of life of the Class Member, given that the receipt of the funds will not in any manner jeopardize the eligibility of the Class Member for disability benefits or related services or grants.  (*See* Doc. No. 136 ¶ 7.)

**2.      Distribution.**

The Court respectfully directs the Department of Human Services to use all available communication methods and tools to provide information about the Settlement Agreement in this case, including this Order and Memorandum, to all county social services directors, case managers, providers, guardians, and advocacy groups.  These communication tools shall include, but not be limited to, an information bulletin, the DHS monthly newsletter, several places on the DHS website, as well as the DHS listservs that reach anyone affected by the Settlement Agreement.

3.      The attached Memorandum is made a part hereof.

Dated:  February 14, 2012                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge

## MEMORANDUM

As noted above, consistent with the Settlement Agreement and the procedures set up in the January 30 Order, the Court has now received approximately 30 letters.  Given

the content of a number of the letters from guardians and conservators, the Court felt compelled to issue this Order.

The December 5 Order and the January 30 Order leave no doubt that if any agency, entity, or individual at any level is of the opinion that the receipt of the apportioned settlement funds by a Class Member should be deemed income, a resource, or should, in some other manner, jeopardize the respective Class Member's eligibility in any way, that entity must come before the Court.[1]  The Court clearly retains the authority to retract an award until such relief is sought from the Court.

Sadly, in the Court's view, the focus and tone of a number of the letters seems to suggest that guardians, whether family members or not, are primarily concerned with the potential for the receipt of settlement funds to affect the Class Members' disability benefits.  Consequently, the majority of guardians thus far have suggested that the money go into a pooled trust and/or prepaid funerals or burial plots for the Class Members.

---

[1]     Paragraph 7 of the December 5 Order states:
    The Court finds and concludes that, both legally and as a matter of equity and fairness, the individual settlement amount being awarded to each individual class member is not a resource for eligibility purposes and, consequently, an individual settlement amount will not affect, in any way, a Class Member's eligibility of disability benefits or other related benefits, or otherwise jeopardize the Class Member's benefits or programming.
    This provision contemplates that if any agency, entity, or individual, private or public, disputes the Court's jurisdiction to make this finding, both as a matter of law and equity; or, contends that a Class Member's eligibility should be affected, the entity or individual must file a motion and come before this Court to address the claim.  The Court also incorporates into this paragraph its remarks off the bench at the December 1, 2011 hearing.
(Doc. No. 136 ¶ 7; *see also* Doc. No. 140 at n.2.)

The true measure of a civilized and democratic society is the way each of us treats those individuals most in need and the most vulnerable amongst us.  That, of course, means that all people are entitled to be treated with patience, dignity, and respect, and to be extended kindness, whoever they may be, regardless of their social standing in the community and especially if they have special needs.

In this case, individuals with intellectual and developmental disabilities are being compensated for what they have been subjected to and the manner in which they have been treated or mistreated.  Individuals with intellectual and developmental disabilities have the same hopes and dreams as all citizens in the United States.  Some of those hopes and dreams are to live a good life, have some fun, enjoy some recreational activities, and to do so with family and friends, and to do so with dignity.

This sentiment has been captured in a letter received by the Court from the parents of one of the Class Members (who is also a parent), which states:

> We will open a checking/savings account in [the Class Member's] name
> and his father/guardian['s] name for the sole purpose of using these funds
> for [our son].  These funds will be for 'fun' stuff for his use and
> enjoyment . . . .  Fun stuff he enjoys over and above what the state might
> pay for.  All items will be documented into a separate file marked '[for our
> son] – fun stuff.

This letter embraces the intent of the Settlement Agreement and what is meant by the goal of improving the quality of life for each Class Member.

Given the Court's reservation of jurisdiction in this case, and consistent with similarly situated cases, after the initial correspondence between the Class Members or their guardians and the Court, the Court will require a follow-up letter in approximately

one year's time from the Class Members or their guardians to the Court, which shall document how the money was expended.  In that manner, the Court will be able to monitor and to observe how each Class Member's quality of life has benefited.  The Court will also review the costs and fees associated with pooled or individual trusts as well as the terms of the trusts.  It is the Court's expectation that each Class Member will receive his or her settlement amount and will directly benefit from it.

The settlement funds shall not be used to pay costs of care or unidentified or unpaid bills.  In the event a burial plot or prepaid funeral is of paramount concern to parents or guardians, the expectation of the Court is that an equivalent amount will be spent, while the Class Member is living, on things the Class Member would prefer or, in the words of the parent above, on "fun stuff" or recreation that is truly enjoyable to the Class Member.  Such an approach will fulfill and comply with the intent of the Settlement Agreement and the Orders of this Court and give true meaning to the words "Equal Justice Under Law."

Each Class Member deserves no less.  The interests of justice require no less.

D.W.F.