# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| James and Lorie Jensen, as parents, guardians and next friends of Bradley J. Jensen, et. al, <br><br> Plaintiffs, <br><br> v. <br><br> Minnesota Department of Human Services, et. al, <br><br> Defendants. | Civil No. 09-1775 (DWF/FLN) <br><br><br> **ORDER** |

The above referenced matter came before this Court on April 20, 2012, for a status conference. The Settlement Class and the State of Minnesota and Minnesota Department of Human Services were represented by counsel of record. Counsel for the United States and the Social Security Administration also appeared by telephone. The Court has reviewed this matter with counsel and considered all submissions and the status of the matter to date.

The Court has recently become aware that local federal government representatives have expressed positions to some Class Members and their guardians that Class Member eligibility for governmental benefits will be jeopardized if Class Members receive apportioned Settlement Funds. These positions have been asserted despite this Court's Orders explicitly stating that Settlement Funds apportioned to Class Members shall not adversely affect their eligibility for governmental benefits and this Court's

explicit requirement that any agency taking a contrary position must file a motion with this Court. (*See* Doc. No. 136, December 5, 2011, Final Approval Order ("December 5 Order") ¶ 7 ("The Court finds and concludes that, both legally and as a matter of equity and fairness, the individual settlement amount being awarded to each individual Class Member is not a resource for eligibility purposes and, consequently, an individual settlement amount will not affect, in any way, a Class Member's eligibility for disability benefits or other related benefits, or otherwise jeopardize the Class Member's benefits or programming. This provision contemplates that if any agency, entity, or individual, private or public, disputes the Court's jurisdiction to make this finding, both as a matter of law and equity; or, contends that a Class Member's eligibility should be affected, the entity or individual must file a motion and come before this Court to address the claim."); Doc. No. 140, January 30, 2012, Order at n.2 (quoting same and stating: "The Court expressly finds that the apportioned amounts are not deemed income, a tax liability, or a resource to any Class Member. To treat the individual awards as such would be contrary to the December 5 Order and the intent of all parties to the Settlement Agreement."))

In addition, this Court has received letters from attorneys for the United States which contain certain statements that contradict this Court's Orders expressly protecting Class Member eligibility for governmental benefits. The Court has advised counsel for the United States that there is a mandated process under the Court's Orders should any entity question the provisions regarding eligibility and resources with respect to benefits, that the United States has not invoked that process, and, therefore, there is nothing before the Court to address the merits of the statements in the letters.

The Court has communicated with Settlement Class counsel, counsel for the State of Minnesota, and counsel for the United States and the Social Security Administration regarding the Unites States' letters, the Court's Orders and responses to these letters, and the further clarification of the use of the Settlement Funds by Class Members for purposes of ensuring Class Member eligibility for governmental benefits and the intent of the parties to this class action settlement.  This Order is the result of these substantive communications.

In light of the positions taken by federal government representatives as noted above, and consistent with this Court's broad equitable powers to render complete justice, *see Brown v. Plata*, 131 S. Ct. 1910, 1944 (2011) ("Once invoked, the scope of a district court's equitable powers is broad, for breadth and flexibility are inherent in equitable remedies.") (internal quotations omitted); *Crawford, et al. v. Janklow, et al.*, 733 F.2d 541, 542 (8th Cir. 1984) ("Acting in equity, courts have broad power to fashion a remedy which does complete justice."); Final Approval Order ¶ 7 ("The Court finds and concludes that, both legally and as a matter of equity and fairness . . ."), and in express recognition of the importance of these issues to Class Members, who are people with developmental disabilities, and to their families, including important federal protections afforded people with developmental disabilities, *see generally* 42 U.S.C. § 12101(a) Americans with Disabilities Act of 1990, *as amended*, and in recognition of the interests of all parties herein, and the process articulated in this Court's Orders relative to the use of the Settlement Funds (*see generally* Doc. No. 141, February 14, 2012, Order (describing use of funds, that settlement funds shall not be used to pay costs of care or

unidentified or unpaid bills, and ongoing Court involvement and jurisdiction)), it has become necessary to reaffirm and clarify this Court's Orders.  **IT IS THEREFORE ORDERED**:

    1.    Solely to the extent necessary to maintain Class Members' eligibility for governmental benefits, including but not limited to Social Security benefits, the apportioned settlement funds to each Class Member shall be considered a "blocked account" or "conservatorship account" consistent with applicable Social Security regulations, applicable Social Security Administration guidance, including Program Operating Manual System ("POMS") SI 01140.215, the decision of *Navarro by Navarro v. Sullivan*, 751 F. Supp. 349 (E.D.N.Y. 1990), and other applicable law, including this Court's broad equitable powers to render complete justice, *see Crawford, et al. v. Janklow, et al.*, 733 F.2d 541, 542 (8th Cir. 1984); *see also White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) (court's denial of petition to release conservatorship funds rebutted presumption that funds were available for care or maintenance); POMS SI CHI01140.215 (In Minnesota, it cannot be presumed that funds are considered accessible and a countable resource; and any "presumption of availability of funds can be nullified if the court order establishing the conservatorship specifically blocks the account from use for food, clothing or shelter"). This Court's prior Orders precluding the expenditure of Settlement Funds for "costs of care," unpaid bills or rent, and noting that the settlement funds are not a "resource," are consistent with the use of a conservatorship account or blocked account, and mean that the Settlement Funds shall not be available or used for "support or maintenance," including expenditures for food, clothing or shelter. *See*

*Navarro*, 750 F. Supp. at 350 (construing social security regulation defining "resources" as assets that can be liquidated for "support and maintenance" and determining settlement award does not constitute a resource, noting: "However the items for which the Settlement Order permits use of the funds may be characterized, they are not fairly denominated support and maintenance."); 20 C.F.R. § 416.1121(h) and § 416.1130(b) (defining "support and maintenance" as "food, or shelter furnished to you"); 20 C.F.R. § 416.1157(b) ("Support and maintenance assistance means cash provided for the purpose of meeting food or shelter needs . . . ."); *cf. Brown ex. rel. Brown v. Day*, 555 F.3d 882, 885-86 (10th Cir. 2009) (under Social Security regulations and guidance, if an individual has no authority to compel use of trust assets for her own support and maintenance, assets are not considered an "available resource"); *Seidenberg v. Weil*, No. Civ. A. 95-WY-2191-WD, 1996 WL 33665490, at *7 (D. Colo. Nov. 1, 1996) (counting trust as available resource where beneficiary cannot compel trustee to use assets for beneficiary's support and maintenance violates federal Medicaid statute).

     With this further clarification on the limitation of the use of the settlement funds, expressly precluding expenditure of the Settlement Funds for support or maintenance, Class Members may use their apportioned settlement amounts as a supplement to enhance the quality of their lives consistent with this Court's Orders in this matter without jeopardizing eligibility for ongoing benefits. This is based on the Court's review of all submissions and the status of the above matter to date, as well as discussions and communication with counsel, including counsel for the United States and the Social

Security Administration. Nothing stated in this Order contradicts, or is any way inconsistent with, the Social Security Act and its regulations.

  2. This Order shall not alter the parties' agreement that this Court's December 5 Order "shall preclude the State and DHS from seeking to recover any of the Settlement Amount from Plaintiffs and the Class Members for cost of care charges for residing at METO or participation in any other State program involving people with developmental disabilities, or any other attempt by the State or DHS to recover any of the Settlement Amount from Plaintiffs or Class Members, and that the State and DHS shall be relieved of any obligations to initiate any proceedings to recover any of Settlement Amount from Plaintiffs and Class Members" (Doc. No. 104, Stipulated Class Action Settlement Agreement § XIV ¶ D), and this Order shall not otherwise adversely affect Class Members' eligibility for governmental benefits.

  3. The Court apportioned the Settlement Funds to Class Members based on documented incidents of restraint or seclusion, including personal injuries sustained, and for the deprivation of Class Members' civil and personal rights. As such, the settlement amounts are not income to Class Members. *See, e.g., Lindsey v. C.I.R.*, 422 F.3d 684, 688 (8th Cir. 2005) (excluding settlement proceeds received as damages for personal physical injury or sickness); *Commissioner v. Glenshaw Glass Co.*, 348 U.S. 426, 432 n.8 (1955); *Roemer v. Commissioner*, 716 F.2d 693, 696 (9th Cir. 1983) (tort compensation excluded from income); *Grunfeder v. Heckler*, 748 F.2d 503, 508 (9th Cir. 1984) (reparation payments paid for deprivation of personal rights excluded from income for determining Social Security Income eligibility); *Grunfeder*, 748 F.2d at 510 (Judge

Ferguson, concurring) ("This analysis does not depend on the status of the recipient but instead rests on the status of the funds received.  Tort compensation traditionally has been excluded from the definition of income and, unless Congress specifically states otherwise, the Social Security Act . . . should not be construed as modifying this longstanding definition.  Because the reparations payments at issue here are in the nature of tort compensation . . . , they neither constitute 'income' under the income tax laws . . . , nor under the Act for purposes of determining eligibility for supplementary security income"); (*see also* Final Approval Order ¶ 5 ("By separate Order, the Court shall determine how the reduced Settlement Amount, minus attorneys' fees and costs awarded below, shall be apportioned amongst Plaintiffs and those Class Members who submitted Claim Forms, and further determine how any remaining amounts shall be distributed in accordance with the terms of the Agreement.");  January 30, 2012, Order at 2 ("The Settlement Agreement established the procedure by which apportionment of individual Class Member settlement amounts would be determined . . . .  Specifically, in addition to basing the apportioned amount on the number of documented times a Class Member was 'Restrained/Secluded,' the Settlement Agreement states:  'The Court may also utilize other factors for apportionment which in the interest of justice it believes should be considered, including, but not limited to, demonstrated serious physical injury.'"); January 30, 2012, Order at 3 ("Moreover, in evaluating the 'other factors' for apportionment as contemplated by Section XIV, Paragraph A, Subparagraph 3 of the Settlement Agreement, the Court evaluated the following:  causation issues in those cases in which a death occurred, whether that death occurred at the facility, and the date on

which the death occurred; and conduct outside the class period relevant to conduct that occurred during the class period.  The Court also carefully scrutinized the totality of the circumstances, as the interests of justice required, relating to the length of time each Class Member was in the facility and the overall effect of restraints on the Class Member, consistent with the Settlement Agreement."); February 14, 2012, Order at 6 ("The true measure of a civilized and democratic society is the way each of us treats those individuals most in need and the most vulnerable amongst us.  That, of course, means that all people are entitled to be treated with patience, dignity, and respect, and to be extended kindness, whoever they may be, regardless of their social standing in the community and especially if they have special needs.  In this case, individuals with intellectual and developmental disabilities are being compensated for what they have been subjected to and the manner in which they have been treated or mistreated.  Individuals with intellectual and developmental disabilities have the same hopes and dreams as all citizens in the United States.  Some of those hopes and dreams are to live a good life, have some fun, enjoy some recreational activities, and to do so with family and friends, and to do so with dignity.")).

4. Class Members, their legal guardians, or legal representatives may provide a copy of this Order to any agency, governmental entity, or its representatives, or any other entity or individual who may assert a position contrary to this Order.

5. Settlement Class Counsel shall provide a copy of this Order to Class Members or their legal guardians with a brief summary of this Order.

6.     In the December 5 Order, the Court concluded, both legally and as a matter of equity and fairness, that the individual settlement amount being awarded to each individual Class Member would not affect in any way the Class Member's eligibility for disability benefits or other related benefits, or otherwise jeopardize the Class Member's benefits or programming.  That Order also required that if any agency, entity, or individual, private or public, disputes the Court's jurisdiction to make this finding, both as a matter of law and equity, or contends that a Class Member's eligibility should be affected, the entity or individual must file a motion and come before this Court to address the claim.  This provision and the prior Orders of this Court remain in full force and effect.


Dated:  April 23, 2012          s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge