| | |
|---|---|
| James and Lorie Jensen, as parents, guardians and next friends of Bradley J. Jensen; James Brinker and Darren Allen, as parents, guardians and next friends of Thomas M. Allbrink; Elizabeth Jacobs, as parent, guardian and next friend of Jason R. Jacobs; and others similarly situated,<br><br>               Plaintiffs,<br><br>v.<br><br>Minnesota Department of Human Services, an agency of the State of Minnesota; Director, Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Clinical Director, the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Douglas Bratvold, individually, and as Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Scott TenNapel, individually and as Clinical Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; and State of Minnesota,<br><br>               Defendants. | Civil No. 09-1775 (DWF/FLN)<br><br><br><br><br><br><br><br><br><br><br><br>**ORDER AND MEMORANDUM** |

M. Ann Santos, Esq., Mark R. Azman, Esq., and Shamus P. O'Meara, Esq., Johnson & Condon, PA, counsel for Plaintiffs.

P. Kenneth Kohnstamm and Steven H. Alpert, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for State Defendants.

Samuel D. Orbovich, Esq., and Christopher A. Stafford, Esq., Fredrikson & Byron, PA, counsel for Defendant Scott TenNapel.

The above-entitled matter came before this Court for a Status Conference on December 11, 2012. On November 27, 2012, the parties provided the Court with statements in preparation for the December 11, 2012 Status Conference. The court-appointed monitor, David Ferleger, also submitted a memorandum to the Court, which was provided to all parties prior to the December 11, 2012 Status Conference.

The parties in this class action reached a Stipulated Class Action Settlement Agreement ("Settlement Agreement") (Doc. No. 104), which was approved by the Court on December 5, 2011 ("Approval Order") (Doc. No. 136).[1] The Approval Order reserved continuing jurisdiction of the Court for the time period set forth in the Settlement Agreement to enforce compliance with the provisions of the Settlement Agreement and the judgment. Then, on July 17, 2012, in addition to appointing an independent advisor and court monitor, David Ferleger, the Court addressed what it referred to as the "service system elements of the Settlement Agreement." (Doc. No. 159 at 2.) The Court has attached, as Exhibit A to this Order, the Order of July 17, 2012, given that many of those system elements were agenda items for the December 11, 2012 Status Conference. As the Court noted in its July 17, 2012 Order, the role of Mr. Ferleger was viewed by the

---

[1] The Settlement Agreement was also attached to the Approval Order as Exhibit A. (Doc. No. 136, Ex. A.)

Court as non-adversarial and, as such, the Court assumed and expected the parties would cooperate and communicate with Mr. Ferleger. However, the Court also acknowledged, at that time, its obligation to oversee, facilitate, and enforce compliance with the terms of the Settlement Agreement, which was intended to benefit many individuals with developmental disabilities for years to come.

The primary purpose of the Status Conference was to encourage a report to the Court from each party as to its compliance with the Settlement Agreement, as well as to review Plaintiffs' assertions of noncompliance with the Settlement Agreement, especially in the context of Plaintiffs' pending motion for enforcement of the Settlement Agreement, set to be heard on March 21, 2013.

Based upon the presentations of the parties at the Status Conference, as well as the input of the court-appointed monitor, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

1. **January 14-15, 2013 Conference Between the Parties.**

Consistent with its remarks at the December 11, 2012 Status Conference, the Court respectfully directs the parties to participate in a conference on January 14-15, 2013, to allow ample time, in consultation with David Ferleger, to address a number of issues relating to the status of Defendants' compliance with the Settlement Agreement including, but not limited, to the following:

    a. Reevaluation of the *Olmstead* Plan provisions of the Settlement Agreement and how to proceed with the *Olmstead* Planning

Committee to carry out the intent of the Settlement Agreement consistent with paragraph 7 of the RECITALS, which states, in pertinent part:

> The State agrees that its goal is to provide these residents with a safe and humane living environment free from abuse and neglect. The State also agrees that its goal is to utilize the Rule 40 Committee and Olmstead Committee process described in this Agreement to extend the application of the provisions in this Agreement to all state operated locations serving people with developmental disabilities with severe behavioral problems . . . .

    b.    Evaluation of the status of the Rule 40 Committee, which is asked to carry out the intent and spirit of the Settlement Agreement.

    c.    Discussion of any and all agreements and amendments to the Settlement Agreement, to the extent that it has been suggested to the Court that such agreements and amendments have been reached. The Court expects the parties to draft a stipulation that should include any and all agreed upon amendments to the Settlement Agreement.

    d.    Discussion of outstanding training issues, and issues of compliance and noncompliance with the Settlement Agreement with respect to those provisions relating directly to training, as well as the hiring of additional staff.

    e.    Discussion and agreement upon a budget for David Ferleger, especially given the fact that the parties have stipulated and agreed that

Mr. Ferleger will serve as the External Reviewer.[2] The parties should also discuss and agree upon the specific role of Mr. Ferleger and the scope of his responsibilities.

    f.    Discussion of whether the schedules and deadlines remain realistic and meaningful, as well as whether extending the Court's jurisdiction for an additional period of time would be in the best interests of all parties.

    g.    Discussion of the continued role of the Court in the context of the intent and spirit of the Settlement Agreement.

    h.    Identification of responsible persons for each task.

    i.    Deadlines for tasks.

    j.    Tasks to be accomplished by Defendants.

    k.    Current status of compliance.

    l.    Unspent funds for community services (*Olmstead* issues).

    m.    Transition planning (*Olmstead* issues).

    n.    Any other items placed on the agenda by Plaintiffs, Defendants, Mr. Ferleger, or the Court prior to January 14, 2013.

2.    To the extent that there remain a number of provisions of the Settlement Agreement that must and should be implemented, there are a number of deadlines that

---

[2] The Court suggests that, absent objection by one or more parties, one way to resolve this issue, consistent with other settlement agreements, would be to agree upon a budget that the Department of Human Services would be responsible for, that would include payment to Mr. Ferleger, in lieu of monthly monitoring by the Court.

have been appropriately self-imposed by the Department of Human Services in its own status reports. The Court expects the parties to comply with those deadlines so that the time period between now and the January 14-15, 2013 conference and the March 21, 2013 hearing on Plaintiffs' motion for enforcement of the Settlement Agreement should not cause further delay in implementing the Settlement Agreement for the benefit of the Class Members and all individuals with developmental disabilities in the State of Minnesota.

3. Consistent with the Court's remarks at the December 11, 2012 Status Conference, the parties shall submit an agenda for the January 14-15, 2013 Status Conference to the Court on or before January 7, 2013. The Court reserves the right to add additional items to the agenda.

4. Within seven (7) days of completion of the conference on January 14-15, 2013, the parties shall file a stipulation or other documents with the Court reflecting the results of the meeting, including any agreements, amendments to the Settlement Agreement, and any other items addressing the issues of compliance and noncompliance with the Settlement Agreement.

5. The Court reserves the right to set an additional status conference with the Court upon receipt of any post-conference documents from the parties.

6. The Court assumes and expects that Roberta Opheim, the Ombudsman for the State of Minnesota Office of the Ombudsman for Mental Health and Developmental Disabilities, and Colleen Wieck, Ph.D., Executive Director of the Minnesota Governor's

Council on Developmental Disabilities, and the appropriate officials from the Department of Human Services will be present at the conference on January 14-15, 2013.

Dated: December 20, 2012     s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge

## MEMORANDUM

The Court will conclude its Order with a short memorandum, noting that the parties entered into the Settlement Agreement in June of 2011, the stated intent and purpose of which was the following:

### RECITALS

\* \* \*

> 7. The State of Minnesota further declares, as a top concern, the safety and quality of life of the Residents of the Facility. The State agrees that its goal is to provide these residents with a safe and humane living environment free from abuse and neglect. The State also agrees that its goal is to utilize the Rule 40 Committee and Olmstead Committee process described in this Agreement to extend the application of the provisions in this Agreement to all state operated locations serving people with developmental disabilities with severe behavioral problems or other conditions that would qualify for admission to METO, its Cambridge, Minnesota successor, or the two new adult foster care transitional homes.

(Doc. No. 104 ("Settlement Agreement") at 3.)

With the help of the transcript from the hearing for final approval of the Settlement Agreement that occurred on December 1, 2011, I would like the parties to come back with the Court to that date since some would suggest we have lost our way since December 1, 2011, given the current status of the implementation of the Settlement

Agreement and the allegations of noncompliance by Plaintiffs.

Plaintiffs' counsel, Shamus O'Meara, opened up the hearing on December 1, 2011 with the following statement:

> Perhaps the most important aspect of this Settlement, Your Honor, is that it is going to benefit not only all Class Members, but the approximate 100,000 people with developmental disabilities in this state and their families. And I will be speaking to some of the statewide, really unprecedented, provisions of the Settlement Agreement that we as Settlement Class Counsel find to be simply wonderful.
>
> Things such as statewide changes of the care and treatment of people with developmental disabilities, the formation of an Olmstead Committee in recognition of the important principles articulated by the U.S. Supreme Court in the *Olmstead versus L.C.* case.
>
> Rule 40, which is an important rule that governs the care and treatment of people with developmental disabilities is going to be looked at by a committee. And there will be an administrative process with public comment that would hopefully lead to some changes that would imbue the best practices that the professionals around these issues care about and will comment on. And then, of course there is regular reporting to this Court over the next two years, and I think that is an important aspect.
>
> So, what does this mean? This means from our perspective as Settlement Class Counsel, that the Class Action Settlement Agreement and its unprecedented comprehensive positive changes in the daily protections afforded not only Class members but all people with developmental disabilities in this state is reasonable and meaningful.

(Doc. No. 146 ("Tr.") 7-8.)

Plaintiffs' counsel went on to state:

> There are thousands of people that work in our State Government, in our Federal Government, and in our local agencies, who have provided justice by choosing a career that highlights the care and treatment of people with developmental disabilities.
>
> It is important to recognize that it is just not on one side of the aisle, it is on all sides of the aisle that justice is done. It is the lawyers in State

8

Government whom we worked with for two and half years. It is the lawyers for the doctors that were sued as individual defendants that we have worked with and dialogued for two and half years. And it is the exertions of these individuals, in partnership with the Federal Court, that spent many, many hours in facilitating communication. And with consultants that worked with us. And with people who have tirelessly worked on these issues for years upon whose shoulders we stand today that brings us to an agreement that I think is unprecedented that will benefit hundreds of thousands of people in this state.

(Tr. 12-13.)

Counsel for the State of Minnesota, Steven Alpert, concurred with the remarks of Plaintiffs' counsel and made the following statement:

> Thank you. May it please the Court? My name is Steve Alpert. I am the Assistant Attorney General. I represent the Minnesota Department of Human Services and other individuals and Defendants in this particular case.
>
> I would like to recognize Anne Barry, who is the Deputy Commissioner of Human Services, who has been involved in this case throughout and will continue to be personally involved in this case. She will specifically address the Court with her comments later.
>
> I would also like to specifically recognize my colleague Ken Kohnstamm, also an Assistant Attorney General with the Minnesota Attorney General's Office representing the Department. He was seated at counsel table.
>
> For both of us, this has been particularly gratifying that we are working on not only a very important case, but we are working on a case where we are able to make a difference in people's lives. We are not just for once talking about money. We are not just talking about Government taking a position and refusing to budge, you know, under the typical stereotype. And we both put a lot of time and effort and personal involvement in this matter. Because in the end, as the Court has seen from the presentation and from all of the discussions and documents, this is an important settlement. It will make a huge difference for people in a positive manner.

9

> I would like to, again, thank Ms. Barry. I would like to thank the Department and all of the people from the Department that have been working with us and will continue to work with us, the other parties, and the consultants who had not only the willingness, but the ability to work through some complex issues and reach an agreement. And again, it will greatly improve the quality in care of the lives of a large number of persons with disabilities, not only in Minnesota, but we have people that come through Minnesota. And it will impact them, as well. And we think that this agreement will set the tone for other states, as well.

(Tr. 26-27.)

Finally, all parties were very clear at the hearing on December 1, 2011 that the goal of everyone, including the Court, was to ensure that the spirit and the intent of the Settlement Agreement, not just the words of the Settlement Agreement, would be implemented going forward. Counsels' statements and their passion and sincerity have been present in the settlement discussions in this case from day one, and were also present on December 1, 2011.

The challenge to each of the parties, the lawyers, and, yes, the Court, is to now carry out that same passion, spirit, and intent of the Settlement Agreement in order for the Settlement Agreement to amount to more than mere words, and so that the large number of individuals with disabilities will truly benefit from the Settlement Agreement. The Court is certain that all parties agree that justice requires that we do so.

D.W.F.