# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

James and Lorie Jensen, as parents, guardians
and next friends of Bradley J. Jensen; James
Brinker and Darren Allen, as parents,
guardians and next friends of Thomas M.
Allbrink; Elizabeth Jacobs, as parent, guardian
and next friend of Jason R. Jacobs; and others
similarly situated,

            Plaintiffs,

v.

Minnesota Department of Human Services,
an agency of the State of Minnesota; Director,
Minnesota Extended Treatment Options, a
program of the Minnesota Department of
Human Services, an agency of the State of
Minnesota; Clinical Director, the Minnesota
Extended Treatment Options, a program of
the Minnesota Department of Human Services,
an agency of the State of Minnesota; Douglas
Bratvold, individually, and as Director of the
Minnesota Extended Treatment Options, a
program of the Minnesota Department of Human
Services, an agency of the State of Minnesota;
Scott TenNapel, individually and as Clinical
Director of the Minnesota Extended Treatment
Options, a program of the Minnesota Department
of Human Services, an agency of the State of
Minnesota; and State of Minnesota,

            Defendants.

Civil No. 09-1775 (DWF/FLN)

**ORDER AND MEMORANDUM**

---

Margaret Ann Santos, Esq., Mark R. Azman, Esq., and Shamus P. O'Meara, Esq.,
O'Meara Leer Wagner & Kohl, PA, counsel for Plaintiffs.

P. Kenneth Kohnstamm and Steven H. Alpert, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for State Defendants.

Samuel D. Orbovich, Esq., and Christopher A. Stafford, Esq., Fredrikson & Byron, PA, counsel for Defendant Scott TenNapel.

---

The above-entitled matter was last before this Court on December 11, 2012, for a status conference, after which the Court filed an Order and Memorandum dated December 20, 2012. (Doc. No. 188.) In a January 9, 2013 letter in response to the agenda that the Court had received and reviewed for the January 14, 2013 meeting of all of the parties with David Ferleger, the Court urged the parties to utilize their best efforts to develop an implementation plan that would include tasks, deadlines, persons responsible, and possible amendments to extend the jurisdiction of the Court for an additional period of time, consistent with the discussions that occurred at the December 11, 2012 status conference. (Doc. No. 192.) The Court stressed that the parties should utilize their best efforts to develop and agree on the role of David Ferleger as well as the budgetary implications of that role. (*Id.*) The Court also offered, in its letter, to get together with the parties if the parties felt that a follow-up status conference would be in everyone's best interests. (*Id.*) Then, on January 23, 2013, the Court sent a follow-up letter, respectfully directing the parties to send a report to the Court with respect to the status of the case and how to move forward, including any agreements that they anticipated or had reached. (Doc. No. 196.) The Court specifically directed and invited Steven Alpert, Shamus O'Meara, Colleen Wieck, and Roberta Opheim to make any recommendations or observations about the current status of the case, with or without

proposals, including issues of compliance and noncompliance with the Settlement

Agreement.  (*Id.*)  At the request of counsel for Plaintiffs and counsel for Defendants, the

Court met with the parties on January 24, 2013.  Mr. Ferleger was not in attendance.

Much has happened since December 11, 2012.  Executive Order 13-01, signed by

Governor Mark Dayton, was filed on January 28, 2013.  The Court notes that, although

an Executive Order was filed four days after counsel met with the Court, there was no

discussion of it with the Court by any of the parties prior to its entry, and there has been

no explanation since its entry as to its relationship to, or its impact on, the Settlement

Agreement, if any.  The Executive Order purports to address *Olmstead* issues, which

means that the issuance of the order must have been discussed sometime prior to

January 28, 2013, with a number of individuals and departments, including the Minnesota

Department of Human Services, as well as perhaps Plaintiffs' counsel.

On January 29, 2013, the day after the issuance of the Executive Order, the Court

received a letter from Plaintiffs' counsel, which addressed not only David Ferleger's role

and Plaintiffs' recommendations for a change in procedural protocol to include quarterly

reports, but also recommended that monthly meetings with David Ferleger be

discontinued as unnecessary.  In response to the January 29, 2013 letter from Plaintiffs'

counsel, the Court received a letter dated January 30, 2013, bearing the signature of

Steven Alpert, which objected to Plaintiffs' proposal as it related to David Ferleger's role.

The Court was then provided with an order drafted by David Ferleger entitled

"Correction Order," dated February 1, 2013, which involved a November 27-30, 2012

licensing review of the Minnesota Specialty Health System at Cambridge, the purpose of

3

which was to determine its compliance or noncompliance with state and federal laws and rules governing the provision of residential services to persons with developmental disabilities, including not only Minnesota Chapter 245B, but also the licensing variance, effective January 3, 2012.  The Court received a stipulation of the parties, dated February 4, 2013, and a proposed order, on or about February 19, 2013, which adopted in substantial part, the parties' stipulation.

In addition to the parties' submissions, the Court also received David Ferleger's response to the Court's January 23, 2013 letter referenced above.  The Court also received a letter from Deputy Commissioner Ann Barry dated February 19, 2013, which not only asserted compliance with the parties' Settlement Agreement, but also addressed budgetary issues with respect to David Ferleger's role as well as objections to his most recent invoice (which the Court addressed in a separate order).  On February 22, 2013, the Court received a Preliminary Report on Client and Staff Safety from David Ferleger.  Then, on February 24, 2013, the Court received a letter from Plaintiffs' counsel asserting that they did not concede that the stipulation represented the parties' view of compliance with the Settlement Agreement.  Finally, the Court received a request on March 4, 2013, from Plaintiffs' counsel to schedule a conference with the Court to discuss resolution of Plaintiffs' Motion to Enforce Settlement, as well as the status of the case.  At that time, the Court was informed that counsel for Defendants also agreed to scheduling a conference to discuss the status of Plaintiffs' Motion to Enforce Settlement.

Based upon the submissions of the parties, including the submissions of David Ferleger, the Court's concern with the status of the case, as well as the issues of

compliance and noncompliance, and the Court having reviewed the procedural history of this case, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

1.      **Status Conference**

By this Order, the Court will respectfully direct Brenda Schaffer, the Court's Calendar Clerk, to set up a chambers conference for all counsel and to verify with respective counsel who should and will be in attendance at the conference.

2.      In the context of the issue of noncompliance with the original Settlement Agreement (Doc. No. 104), the Court respectfully declines, absent further order of the Court, to modify the role of David Ferleger or to otherwise approve the stipulation of the parties at this time.  However, once the Court has had an opportunity to meet with counsel for each party and has established the role of Mr. Ferleger (with or without agreement of the parties), the Court then expects Deputy Commissioner Ann Barry and David Ferleger to meet and to utilize their best efforts to agree on a budget for David Ferleger.  Moreover, the Court intends to inform the parties at the status conference that given the status of the case, including the issues of noncompliance, the focus of David Ferleger will be to evaluate compliance and noncompliance issues vis-à-vis a mediation approach.  Consequently, with or without agreement of the parties, the Court will establish the role and function of David Ferleger, as well as establish the budget for his services, if the parties are unable to reach an agreement.

3.      The Court expressly reserves the right to request the assistance of the United States Department of Justice, Civil Rights Division, with respect to compliance issues with the Settlement Agreement and the Orders of this Court.

Dated:  March 19, 2013          s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge

## MEMORANDUM

The Court will end this Order in the same tone it ended its Order on December 20, 2012.  The Court did not question, even for a moment, respective counsel's statements and their passion and sincerity during the settlement discussions, or their statements and representations on December 1, 2011, when the Settlement Agreement was approved by the Court.

Sadly, however, careful scrutiny of the progress or, more accurately stated, the lack of progress that has been made since the hearing on December 1, 2011, establishes that that same passion, spirit, and the good intentions behind that passion, care, and concern for those individuals with developmental disabilities, has been absent for most of the last 16 months.  The Court must also bear some responsibility for the status of this case, since it approved the original Settlement Agreement.

The Court is becoming increasingly concerned that a large number of individuals with developmental disabilities and their families, friends, and loved ones will soon be before this Court proclaiming that, contrary to the intent of the Settlement Agreement, the representations of all parties concerned during the settlement discussions, and at the

6

December 1, 2011 hearing, nothing has changed.  Time will tell if individuals with developmental disabilities will truly benefit from the Settlement Agreement.

D.W.F.