# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| James and Lorie Jensen, as parents, guardians and next friends of Bradley J. Jensen; James Brinker and Darren Allen, as parents, guardians and next friends of Thomas M. Allbrink; Elizabeth Jacobs, as parent, guardian and next friend of Jason R. Jacobs; and others similarly situated, | Civil No. 09-1775 (DWF/FLN) |
| Plaintiffs, | |
| v. | **MEMORANDUM AND ORDER** |
| Minnesota Department of Human Services, an agency of the State of Minnesota; Director, Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Clinical Director, the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Douglas Bratvold, individually, and as Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Scott TenNapel, individually and as Clinical Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; and State of Minnesota, | |
| Defendants. | |

Margaret Ann Santos, Esq., Mark R. Azman, Esq., and Shamus P. O'Meara, Esq., O'Meara Leer Wagner & Kohl, PA, counsel for Plaintiffs.

Steven H. Alpert and Scott H. Ikeda, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for State Defendants.

Samuel D. Orbovich, Esq., and Christopher A. Stafford, Esq., Fredrikson & Byron, PA, counsel for Defendant Scott TenNapel.

**MEMORANDUM**

Before the Court is Plaintiffs' Motion for Sanctions (Doc. No. 230) which "seeks to hold the State Defendants accountable for their bad-faith conduct and lack of candor to the Court, Court Monitor, consultants and Settlement Class" (Doc. No. 232 at 1) on account of the operation of the Minnesota Specialty Health System (MSHS) – Cambridge ("Cambridge") facility without a license required by the Settlement Agreement, and also the concealment of that violation of the Settlement. The Motion was heard on November 25, 2013.

The material facts are not in dispute. Cambridge operated in violation of the law for 10 months from its establishment on July 1, 2011 until it was licensed by the Minnesota Department of Health on April 24, 2012. (Doc. No. 217 at 18, 44-47.) The Minnesota Department of Human Services (the "DHS") did not submit a license application for Cambridge until February 27, 2012. (Doc. No. 243, Ex. C.) As the DHS itself stated to the Court Monitor on June 4, 2013, "Cambridge improperly operated without a SLF license until April 24, 2012." (Doc. Nos. 243, Ex. D & 217.)

The Court approved and adopted the Settlement Agreement by Order of December 5, 2011 (Doc. No. 136); the licensure requirement was thus violated for more

than three months since the Settlement Agreement was approved by the Court.[1]
Defendants put it this way, "DHS' failure to obtain one of two required licenses for the MSHS-Cambridge facility is undisputed and, in DHS' own words, is inexcusable." (Doc. No. 241.) At the hearing, Defendants stated that senior DHS officials (although not Deputy Commissioner Anne Barry, Commissioner Lucinda Jesson, or counsel) knew that Cambridge was required to be, but was not licensed. Defendants do not deny that they failed to inform the Court, Court Monitor, or Plaintiffs' counsel that Cambridge was unlicensed in violation of the order approving the Settlement Agreement.[2]

Disagreement arises with regard to the appropriateness and amount of sanctions. Plaintiffs request that a $150,000 "monetary sanction be paid into the Court ordered *cy pres* fund set up specifically for people with developmental disabilities and their families" and $50,000 "for time spent by Settlement Class Counsel representing the Settlement Class against the DHS's lack of candor and bad faith conduct over several months." (Doc. Nos. 249 at 3, n.2 & 230 at 5.) Defendants urge that they be given credit

---

[1] In addition, the Court notes that operation of Cambridge without a required license is a crime. Minn. Stat. § 144.50, subd. 1 ("(a) No person, partnership, association, or corporation, nor any state, county, or local governmental units, nor any division, department, board, or agency thereof, shall establish, operate, conduct, or maintain in the state any hospital, sanitarium or other institution for the hospitalization or care of human beings without first obtaining a license therefor in the manner provided in sections 144.50 to 144.56 . . . ; (b) A violation of this subdivision is a misdemeanor punishable by a fine of not more than $300. . . .").

[2] At the November 25, 2013 hearing, Defendants' counsel informed the Court that higher level DHS officials knew of the lack of licensure and did not inform others about it. Counsel further stated that Deputy Commissioner Anne Barry did not know until she read the draft of the February 2013 Legislative Auditor's report. Even after that report, Defendants and their counsel did not provide notice of the licensing violation.

3

for conceding the violation, once it was reported by the Court Monitor, and that, considering the expense of the independent court monitoring of compliance, the States' "resources are best spent on ensuring future compliance and on the people DHS serves." (Doc. No. 241 at 1-2.)

Separate from Plaintiffs' motion for sanctions at this time, while the Court continues to be concerned about the DHS's slow pace at coming into compliance with the Settlement Agreement that is now two years old, the only issue before the Court, perhaps unfortunately, is the noncompliance issue with the licensure at Cambridge. The Court respectfully rejects the assertion of the DHS that it should consider as a mitigating factor the cost being paid for by the DHS in monitoring compliance with the Settlement Agreement, since that cost was precipitated by and continues to be caused by the Defendants' noncompliance or, perhaps more appropriately stated, the DHS's failure to treat compliance with the specific requirements of the Settlement Agreement as a priority. (Doc. Nos. 159 & 217.)

From the Court's point of view, had the DHS disclosed Cambridge's unlicensed status at the settlement approval hearing two years ago, or in the months that followed, the issue could have been addressed at that time. Moreover, had the DHS immediately brought the issue to the attention of the Court at the time of the February 2013 Legislative

Auditor's report, the issue could have been addressed at that time. Unfortunately, it took the June 11, 2013 Court Monitor's report to bring this issue to the Court's attention.[3]

Consequently, the Court finds and concludes that the DHS violated the Settlement Agreement when it failed to obtain the required license for Cambridge. This violation is anything but a trivial or unimportant matter. For example, Cambridge residents and their families were entitled to have a facility which complied with fundamental legal requirements. This Court is more than a mere bystander to this very important Settlement Agreement where all parties promised to improve the quality of life for individuals with disabilities. The Court further finds that the DHS consciously concealed and misled the Plaintiffs and the Court with regard to the lack of licensure, or if not consciously concealed and misled, was indifferent to both the violation and the expectation of candor with all parties, including the Court; conceding the violation once reported by the Court Monitor does not mitigate this in any way. The licensing issue was treated in a cavalier manner to the extent that the issue was not immediately forwarded to the appropriate superiors and acted upon. Moreover, once the Legislative Auditor's report draft was received at the DHS, the DHS and its counsel should have immediately brought the noncompliance and the status of the nonlicensure to the parties' and Court's attention.

## CONCLUSION

Whether the lapses by the DHS were due to conscious concealment or indifference, the Court needs additional information at this time to decide what sanction, including any

---

[3] The Court Monitor learned of the licensure issue from the Office of Legislative Auditor's report on the DHS's State Operated Services (February 2013), cited at Court Monitor, *Status Report on Compliance*. (Doc. No. 217 at 44-45.)

financial sanction, if any, would be appropriate under the circumstances.  As the Court noted and ruled off the bench, it will await the report from the Court Monitor on the current status of compliance and on Defendants' cooperation with the implementation plan required under the Order of August 28, 2013 to make its final decision on appropriate sanctions.  (Doc. No. 224; *see also* Doc. Nos. 237 & 248.)

Sadly, however, as this Court has said on prior occasions, careful scrutiny of the entire lack of progress that has been made since the hearing on December 1, 2011, establishes that the same passion, spirit, and, hopefully, good intentions behind the passion, care, and concern for individuals with developmental disabilities, has been absent since that hearing.  Time will tell, sadly or otherwise, if individuals with developmental disabilities will truly benefit from the Settlement Agreement.  Unfortunately, as the Court ends yet another order in this case, more than two years have gone by, and the record before the Court confirms that no one's life has improved, the DHS remains out of compliance, and there exists, as of the date of this order, no road map or implementation plan, as promised by the specific provisions of the Settlement Agreement.

Based upon the presentations of counsel and consistent with the Court's remarks and ruling off the bench on November 25, 2013, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

## ORDER

1.  The Court finds and concludes that Plaintiffs' Motion for Sanctions (Doc. No. [230]) is **GRANTED**.  However, for the reasons stated off the bench at the time of

the hearing and in this Memorandum and Order, the Court reserves ruling on what sanctions are appropriate, pending receipt of the status of compliance by Defendants and the status of the implementation plan required by this Court, noted in the Court's Memorandum and Order.

Dated:  December 17, 2013           s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    United States District Judge