# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

James and Lorie Jensen, as parents, guardians
and next friends of Bradley J. Jensen; James
Brinker and Darren Allen, as parents,
guardians and next friends of Thomas M.
Allbrink; Elizabeth Jacobs, as parent, guardian
and next friend of Jason R. Jacobs; and others
similarly situated,

Civil No. 09-1775 (DWF/FLN)

Plaintiffs,

v.

**ORDER**

Minnesota Department of Human Services,
an agency of the State of Minnesota; Director,
Minnesota Extended Treatment Options, a
program of the Minnesota Department of
Human Services, an agency of the State of
Minnesota; Clinical Director, the Minnesota
Extended Treatment Options, a program of
the Minnesota Department of Human Services,
an agency of the State of Minnesota; Douglas
Bratvold, individually, and as Director of the
Minnesota Extended Treatment Options, a
program of the Minnesota Department of Human
Services, an agency of the State of Minnesota;
Scott TenNapel, individually and as Clinical
Director of the Minnesota Extended Treatment
Options, a program of the Minnesota Department
of Human Services, an agency of the State of
Minnesota; and the State of Minnesota,

Defendants.

---

Mark R. Azman, Esq., and Shamus P. O'Meara, Esq., O'Meara Leer Wagner & Kohl, PA,
counsel for Plaintiffs.

Aaron Winter, Scott H. Ikeda, and Anthony R. Noss, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for State Defendants.

Samuel D. Orbovich, Esq., and Christopher A. Stafford, Esq., Fredrikson & Byron, PA, counsel for Defendant Scott TenNapel.

---

## INTRODUCTION

Before the Court is the Court Monitor's August 6, 2014 *Report to the Court: Approval of Revised Olmstead Plan* ("*Olmstead* Plan Report") (Doc. No. 333) recommending Court approval of the State of Minnesota's proposed modifications to Minnesota's *Olmstead* Plan ("Proposed *Olmstead* Plan") (Doc. No. 326-1). For the reasons discussed below, the Court declines to approve the Proposed *Olmstead* Plan as it is currently written.

## BACKGROUND

In the Court's December 5, 2011 Final Approval Order for the Stipulated Class Action Settlement Agreement ("Settlement Agreement"), the Court ordered the following with respect to the *Olmstead* Plan:

> Within eighteen (18) months of the Court's approval of this Agreement, the State and the Department shall develop and implement a comprehensive *Olmstead* Plan that uses measurable goals to increase the number of people with disabilities receiving services that best meet their individual needs and in the "Most Integrated Setting," and is consistent and in accord with the U.S. Supreme Court's decision in *Olmstead v. L.C.*, 527 U.S. 582 (1999).

(Doc. No. 136, Ex. A at 18.) Since the Court's December 5, 2011 Order, the Court and the Court Monitor have reiterated these requirements in numerous orders and reports.

(*See, e.g.*, Doc. No. 311 at 2 (reiterating that the *Olmstead* Plan must include "measurable

goals" and providing examples of such goals); Doc. No. 212 at 9 (reiterating that a comprehensive *Olmstead* Plan must use measurable goals).)

Pursuant to the terms of the Settlement Agreement, the State and the Department of Human Services ("DHS") were to develop and implement a comprehensive *Olmstead* Plan within eighteen months of the Court's approval of the Settlement Agreement.  (Doc. No. 136, Ex. A at 18.)  After the State and DHS failed to complete this directive by the original due date, the Court ordered the State and DHS to file the *Olmstead* Plan with the Court by November 1, 2013—five months after the due date—for the Court's review and approval.  (Doc. No. 224 at 5.)  The State submitted the *Olmstead* Plan to the Court on October 31, 2013.  (Doc. No. 246-1.)  On January 22, 2014, the Court provisionally approved the *Olmstead* Plan, subject to the Court's review of the State's modifications and any submissions by Plaintiffs' Class Counsel, and directed the State to file a revised *Olmstead* Plan by July 15, 2014.  (Doc. No. 265 at 3-4.)

On July 10, 2014, the State filed the Proposed *Olmstead* Plan that is now before the Court.  (Doc. No. 326-1.)  In response to the Proposed *Olmstead* Plan, the Plaintiff Class submitted a letter to the Court on July 24, 2014, "reiterat[ing] the Settlement Class positions . . . in [its] prior letters to the Court and Court Monitor concerning the Olmstead Plan" (Doc. No. 332 at 11) and observing that "issues [] remain, including a necessary recommitment and focus needed to complete and implement an *Olmstead* Plan using measurable goals" (*id.* at 10).  Specifically, the Plaintiff Class referenced a February 25, 2014 letter to the Court in which the Plaintiff Class expressed concerns that "the Olmstead Plan be strategic, measurable, and clearly state who is responsible, with a

listing of specific timelines, and how the Plan will be implemented, and specific resources needed" (Doc. No. 276 at 3), and an October 22, 2013 letter to the Court Monitor in which the Plaintiff Class criticized DHS' "cavalier approach to the development of the Court ordered *Olmstead* Plan" and the resulting "rushed, incomplete and deficient *Olmstead* Plan" (Doc. No. 276-1 at 2, 6).

On August 6, 2014, the Court Monitor filed the *Olmstead* Plan Report with the Court, recommending final approval of the Proposed *Olmstead* Plan. (Doc. No. 333 at 2.) However, in the *Olmstead* Plan Report, the Court Monitor observed that "[s]ome concerns remain." (*Id.* at 3.) The Court Monitor recommended "refinement with regard to [the *Olmstead* Plan's] structure and specificity," including the need for measurable goals, new methods for presenting and reporting information, and better phrasing of commitments to enable compliance evaluation. (*Id.* at 7.)

## DISCUSSION

The Court finds that the Proposed *Olmstead* Plan contains significant shortfalls that require modification to comply with the comprehensive standards articulated in the Settlement Agreement and in subsequent Court Orders and Court Monitor Reports. The Court emphasizes two particularly deficient areas of concern: (1) the lack of measurable goals; and (2) the lack of accurate reporting.

## I.      Measurable Goals

First, the Proposed *Olmstead* Plan lacks measurable goals. As stated above, the Court and the Court Monitor have repeatedly emphasized the need for specific, measurable goals to achieve compliance with the Settlement Agreement. However, the

Proposed *Olmstead* Plan lacks specificity as to how the goals will be accomplished.  The

Proposed *Olmstead* Plan merely states processes to establish baselines, but fails to

provide comprehensive baseline data in almost all areas to allow measurement of whether

the goals are being met.  This is insufficient to comply with the Settlement Agreement

requirements for measurable goals to achieve its purposes.

To comply with the Settlement Agreement's measurable goals requirements, the

Proposed *Olmstead* Plan must contain concrete, reliable, and realistic commitments,

accompanied by specific and reasonable timetables, for which the public agencies will be

held accountable.  Vague assurances of future integrated options is insufficient; to be

effective, the Proposed *Olmstead* Plan must demonstrate success in actually moving

individuals to integrated settings in furtherance of the goals.

In an effort to advise the parties of the Court's expectations, the Court describes

two examples of measurable goals based on the objectives listed in the Proposed

*Olmstead* Plan.  First, the Proposed *Olmstead* Plan lists "access to dental services" for

people with disabilities as a goal.  (Doc. No. 326-1 at 79.)  According to the Proposed

*Olmstead* Plan, the State will develop an implementation plan, based on information

obtained from a legislatively-mandated study of Minnesota Health Care Program's dental

program, that includes timelines and measurable goals, by June 30, 2014.  (*Id.*)  Based on

the record before the Court, it is unclear whether the State established a measurable goal

by June 30, 2014.  To effectuate the Proposed *Olmstead* Plan's goal of increased access

to dental services for people with disabilities, the Court proposes the following as an

example of a measurable goal:  "By July 1, 2015, no fewer than an additional 100 people with disabilities will receive dental services."

Second, with respect to employment, the Proposed *Olmstead* Plan states a goal of "[e]xpanding opportunities for adults with disabilities."  (*Id.* at 42.)  According to the Proposed *Olmstead* Plan, State agencies will "identify consistent baseline measures to assess progress on increased competitive employment of adults with disabilities (including but not limited to people with mental illness and intellectual/developmental disabilities)" by June 30, 2014, and "establish a baseline for the measures and establish measurable goals to demonstrate progress in increasing competitive employment for adults with disabilities" by September 30, 2014.  (*Id.*)  Once again, no concrete, measurable goals are articulated.  An example of such a measurable goal is the following: "By June 30, 2015, no fewer than an additional 300 people (above the baseline) with disabilities will be competitively employed."

## II.    Accurate Reporting

Second, and relatedly, the State must ensure accurate progress reporting.  Reports to the Court must be accurate, complete, and verifiable.  The Court requires the State to report on the following:  (1) the number of people who have moved from segregated settings into more integrated settings; (2) the number of people who are no longer on the waiting list; and (3) the quality of life measures.  With respect to the first inquiry, any calculation must consider admissions, readmissions, discharges, and transfers—reflecting the dynamic movement of individuals through segregated settings—to determine the net number of people who have moved into more integrated settings.  Regarding the second

inquiry, the State must evaluate whether the movement is at a reasonable pace.  Finally,

with respect to the third inquiry, the State must summarize and submit to the Court any

available data and highlight any gaps in information.

Although the Court identifies only two of the most glaring flaws in the Proposed

*Olmstead* Plan, the Court reminds the State of its comprehensive responsibilities under

the Settlement Agreement and the *Olmstead* decision.  The Court urges the State to apply

the same passion, care, and concern for individuals with developmental disabilities that

the State proclaimed at the time of the Settlement Agreement.  When the State assured

the Court at the time of the Settlement Agreement that the "important settlement" would

"make a huge difference for people in a positive manner" (Doc. No. 146 at 27), the Court

did not question the sincerity of the State's declarations.  However, nearly three years

have passed since the Court approved the Settlement Agreement, and yet the record

before the Court indicates that the "new and improved" *Olmstead* Plan heralded by the

State has yet to be realized.

Whether the Settlement Agreement and revised *Olmstead* Plan ultimately will

improve the lives of individuals with disabilities remains to be seen.  The Court is

committed to ensure that the Settlement Agreement is not an empty promise or a

meaningless gesture to placate individuals with disabilities.  As the Court has stated in

prior opinions, many individuals with developmental disabilities and their families have

lost faith in the improvements promised in the Settlement Agreement.  Meaningful

progress must be realized across the State.  Justice requires no less.

## ORDER

Based on the entire record of this case, **IT IS HEREBY ORDERED THAT:**

1.      The Court **DECLINES TO ADOPT** the State's Proposed *Olmstead* Plan (Doc. No. [326-1]) at this time.

2.      The parties shall submit a revised *Olmstead* Plan to the Court Monitor by November 10, 2014.

Dated:  September 18, 2014        s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge