# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| James and Lorie Jensen, as parents, guardians, and next friends of Bradley J. Jensen; James Brinker and Darren Allen, as parents, guardians, and next friends of Thomas M. Allbrink; Elizabeth Jacobs, as parent, guardian, and next friend of Jason R. Jacobs; and others similarly situated, | Civil No. 09-1775 (DWF/BRT) |
| Plaintiffs, | |
| v. | **ORDER** |
| Minnesota Department of Human Services, an agency of the State of Minnesota; Director, Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Clinical Director, the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Douglas Bratvold, individually and as Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Scott TenNapel, individually and as Clinical Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; and the State of Minnesota, | |
| Defendants. | |

Mark R. Azman, Esq., and Shamus P. O'Meara, Esq., O'Meara Leer Wagner & Kohl, PA, counsel for Plaintiffs.

Nathan A. Brennaman, Scott H. Ikeda, Anthony R. Noss, and Aaron Winter, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for State Defendants.

Samuel D. Orbovich, Esq., and Christopher A. Stafford, Esq., Fredrikson & Byron, PA, counsel for Defendant Scott TenNapel.

## INTRODUCTION

Before the Court is the State of Minnesota's March 20, 2015 proposed modifications to Minnesota's *Olmstead* Plan ("Proposed *Olmstead* Plan"). (Doc. No. 401-1.) For the reasons discussed below, the Court declines to approve the Proposed *Olmstead* Plan as it is currently written.

## BACKGROUND

In June 2011, the parties to this class action litigation entered a Stipulated Class Action Settlement Agreement ("Settlement Agreement"), which includes the following provision with respect to the *Olmstead* Plan:

> Within eighteen (18) months of the Court's approval of this Agreement, the State and the Department shall develop and implement a comprehensive *Olmstead* plan that uses measurable goals to increase the number of people with disabilities receiving services that best meet their individual needs and in the "Most Integrated Setting," and is consistent and in accord with the U.S. Supreme Court's decision in *Olmstead v. L.C.*, 527 U.S. 581 (1999).

(Doc. No. 104 at 18.) Based upon the presentations and submissions of the parties, including counsel's remarks at the Final Approval Hearing,[1] the Court approved the Settlement Agreement on December 5, 2011. (*See* Doc. No. 136.)

---

[1] At the Final Approval Hearing on December 1, 2011, both Plaintiffs and Defendants alike hailed the Settlement Agreement as one which would fundamentally improve the lives of individuals with disabilities in Minnesota and serve as a national model.

Pursuant to the terms of the Settlement Agreement, the State and the Department of Human Services ("DHS") were to develop and implement a comprehensive *Olmstead* Plan within eighteen months of the Court's approval of the Settlement Agreement. (Doc. No. 104 at 18.) After the State and DHS failed to develop and implement a comprehensive *Olmstead* Plan by the original due date, the Court ordered the State and DHS to file the *Olmstead* Plan with the Court by November 1, 2013—five months after the due date—for the Court's review and approval. (Doc. No. 224 at 5.) The State submitted the *Olmstead* Plan to the Court on October 31, 2013. (Doc. No. 246-1.) On January 22, 2014, the Court provisionally approved the State's proposed *Olmstead* Plan, subject to certain modifications, and directed the State to file an updated version of the *Olmstead* Plan by July 15, 2014. (Doc. No. 265 at 3-4.)

On July 10, 2014, the State filed a modified version of its *Olmstead* Plan. (*See* Doc. No. 326-1.) On September 18, 2014, the Court declined to approve the State's modified *Olmstead* Plan after finding significant deficiencies, including a lack of measurable goals and a lack of accurate reporting, and directed the State to file a revised version of the *Olmstead* Plan by November 10, 2014. (Doc. No. 344 at 4-8.)

On November 10, 2014, the State filed a revised *Olmstead* Plan. (*See* Doc. No. 369-1.) On January 9, 2015, the Court provisionally approved the State's revised *Olmstead* Plan, subject to certain modifications, and directed the State to file an updated version of the *Olmstead* Plan by March 20, 2015. (Doc. No. 378 at 14.)

On March 18, 2015, two days before the March 20, 2015 deadline, the State submitted a letter to the Court seeking "clarification on the scope of the Court's January 9,

2015 Order requiring the State to submit a revised Olmstead Plan by March 20, 2015" and requesting "the Court to extend the March 20 due date to allow for clarification of the Court's January 9 Order." (Doc. No. 398 at 1.) On March 19, 2015, the Court denied the State's request in its entirety. (Doc. No. 400 at 5.)

On March 20, 2015, the State filed the Proposed *Olmstead* Plan that is now before the Court for review. (Doc. No. 401-1.) In response to the State's Proposed *Olmstead* Plan, the Plaintiff Class filed objections with the Court, asserting that:

> [T]his Court's specific, important guidance has been repeatedly rejected by DHS which now offers another Revised Olmstead Plan without the fundamental measures needed to be successful, and accountable, to the people with disabilities and their families DHS seeks to serve. The result remains an incomplete plan in violation of the *Jensen* Settlement Agreement, the many prior Orders of this Court, and the civil rights of people with disabilities in Minnesota.

(Doc. No. 412 at 3.) Accordingly, the Plaintiff Class requests that the Proposed *Olmstead* Plan "be rejected as insufficient and in violation of the *Jensen* Class Action Settlement Agreement." (*Id.*)

On April 6, 2015, interested nonparties to this litigation, Advocating Change Together ("ACT")[2] and the Minnesota Disability Law Center ("MDLC") of Mid-Minnesota Legal Aid[3] filed letter responses to the Proposed *Olmstead* Plan. (*See* Doc. No. 408; Doc. No. 409.) ACT's concerns focus on the Proposed *Olmstead* Plan's Community Engagement Section, specifically, the lack of supports and follow-up for

---

[2]   ACT's mission is to "[e]mpower[] people with disabilities to advocate for themselves." (Doc. No. 408 at 1.)

[3]   MDLC "provides legal and policy advocacy for individuals with all types of disabilities statewide on issues related to their disabilities." (Doc. No. 427 at 2.)

4

person-centered plans and the lack of recognition of different engagement levels.  (*See* Doc. No. 408 at 1-2.)  MDLC's concerns pertain primarily to the lack of "sufficient sound baseline data, measurable goals, or outcomes."  (Doc. No. 409 at 2; *see also* Doc. No. 427 at 16 (criticizing the Proposed *Olmstead* Plan for its failure to provide "necessary detail, accurate baseline data, and adequately robust goals"); *id.* at 16-22 (summarizing the deficiencies of the Proposed *Olmstead* Plan).)  Consequently, MDLC contends that "[t]he Court should reject the State's proposed plan but allow the State to continue developing a plan that fully complies with applicable law and that delivers upon the promises of the *Olmstead* decision and the *Jensen* settlement."  (Doc. No. 427 at 2.)

On April 14, 2015, the Court Monitor filed his *Report to the Court:  Verification of Representations by the State*, in which he observes that "[t]he current proposed revised Plan does not comply with the Court's orders."  (Doc. No. 414 at 16.)  In light of this observation, the Court Monitor recommends that "[t]he State should revise the entire Olmstead Plan on a short timetable in accordance with the Court's orders[.]"  (*Id.* at 31.)

## DISCUSSION

The Court has repeatedly provided Defendants with the standards against which the *Olmstead* Plan is to be measured.  (*See, e.g.*, Doc. No. 212 at 9; Doc. No. 265 at 2-4; Doc. No. 344 at 2-7; Doc. No. 378 at 4-14.)  As the Court has previously stated, "the Proposed *Olmstead* Plan must contain concrete, reliable, and realistic commitments, accompanied by specific and reasonable timetables, for which the public agencies will be held accountable."  (Doc. No. 344 at 5.)  "Vague assurances of future integrated options is insufficient; to be effective, the Proposed *Olmstead* Plan must demonstrate success in

actually moving individuals to integrated settings in furtherance of the goals." (*Id.*) In addition, reports to the Court must be accurate, complete, and verifiable. (*Id.* at 6.) The Court has provided numerous illustrative examples of the application of these standards in previous orders. (*See, e.g.*, Doc. No. 344 at 4-7; Doc. No. 378 at 4-14.)

Comments submitted by the Plaintiff Class, the Court Monitor, consultants to the parties, Dr. Colleen Wieck and Roberta Opheim, and interested nonparties in response to previous versions of the *Olmstead* Plan have also clearly delineated areas of concern and highlighted numerous problems with the State's proposed modifications. (*See, e.g.*, Doc. No. 274-1; Doc. No. 275; Doc. No. 276; Doc. No. 332; Doc. No. 369; Doc. No. 384.)

After carefully reviewing the Proposed *Olmstead* Plan, the Court concludes that the Proposed *Olmstead* Plan does not comply with the comprehensive standards and requirements set forth in the Settlement Agreement, *Olmstead v. L.C.*, 527 U.S. 581 (1999), and in numerous prior orders of this Court. The Court has detailed with specificity the deficiencies of previous submissions by the State based on these requirements for the *Olmstead* Plan. Without citing each instance in which the Proposed *Olmstead* Plan fails to meet these requirements, the Court finds that the State's submission as a whole fails to meet the above standards. To the extent that Defendants request "further clarifications" of these standards (*see* Doc. No. 401 at 1), Defendants' request is denied. The Court encourages Defendants to review the above-named requirements, the Court's previous orders, and review and revise its *Olmstead* Plan accordingly to comply with these requirements.

**CONCLUSION**

The Court reminds Defendants of their promise to "develop and implement a comprehensive *Olmstead* Plan" more than three years ago at the time of the Settlement Agreement. (*See* Doc. No. 104 at 18.) The Court expects Defendants to timely fulfill their obligations under the Settlement Agreement and to promptly comply with the Court's orders. The Court, in turn, has an "obligation to oversee, facilitate, and . . . enforce compliance with the terms of th[e] Settlement Agreement that will benefit so many for years to come." (*See* Doc. No. 224 at 10 (citing Doc. No. 159 at 12; Doc. No. 188 at 3).)

The Court has repeatedly expressed its concerns regarding Defendants' pattern of noncompliance with the terms of the Settlement Agreement that were announced at the Final Approval Hearing before this Court on December 1, 2011, and reaffirmed in this Court's numerous subsequent orders. (*See, e.g.*, Doc. No. 188; Doc. No. 205, Doc. No. 212, Doc. No. 223, Doc. No. 259, Doc. No. 368, Doc. No. 400.) More recently, the Court has expressed its concern regarding Defendants' evident unfamiliarity or unawareness of this Court's rules and orders regarding filing deadlines and the Local Rules regarding motions for clarification or reconsideration.[4]

---

[4] The Court is troubled by Defendants' apparent disregard for the established rules and procedures set forth in the Local Rules and the Court's prior orders. (*See, e.g.*, Doc. No. 398; Doc. No. 429, Ex. A.) However, the Court has previously notified the parties that issues relating to "compliance with federal rules and procedures regarding formal and informal submissions to the Court" and "compliance with the provisions of the Settlement Agreement and the Court's Orders" will be addressed at the Status Conference on May 28, 2015. (*See* Doc. No. 421 at 2.)

The Court urges the State to apply the same passion, care, and concern for individuals with disabilities that the State proclaimed at the time of the Settlement Agreement.  Nearly three years have passed since the Court approved the Settlement Agreement, and yet the record before the Court indicates that many of the improvements heralded by the State have yet to be realized.  As the Court has previously stated, "[t]he challenge to each of the parties, the lawyers, and, yes, the Court, is to now carry out that same passion, spirit, and intention of the Settlement Agreement in order for the Settlement Agreement to amount to more than mere words, and so that the large number of individuals with disabilities will truly benefit from the Settlement Agreement."  (Doc. No. 188 at 10.)

The time has come to truly serve the best interests of individuals with disabilities within the State of Minnesota.  Cooperation and communication of all parties are absolutely essential to develop and implement an improved *Olmstead* Plan.  The State must demonstrate its commitment to fulfill the promise of *Olmstead* and ensure that the Settlement Agreement and *Olmstead* Plan will improve the lives of individuals with disabilities across the State.  Justice requires no less.

**ORDER**

Based upon the presentations and submissions of the parties and the Court Monitor, and given the continued concerns of this Court relating to the status of the case and Defendants' noncompliance with the Settlement Agreement; and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that:

1. The Court **DECLINES TO ADOPT** the State's Proposed *Olmstead* Plan (Doc. No. [401-1]).

2. The parties shall submit a revised *Olmstead* Plan to the Court by July 10, 2015. The revised *Olmstead* Plan shall encompass the requirements of the Settlement Agreement and prior orders of this Court and shall respond to previously identified gaps and deficiencies in the State's proposed *Olmstead* Plan.

3. In lieu of contempt and other sanctions at this time, the Court requires Defendants to fulfill their obligations in a timely manner for the Court's review and approval; attend any status conferences that may be scheduled by the undersigned or Magistrate Judge Becky R. Thorson regarding the *Olmstead* Plan; and actively seek input from the consultants to the parties, Dr. Colleen Wieck and Roberta Opheim, in this process.

4. The Court expressly reserves the right to issue an order to show cause or impose sanctions, depending upon the status of compliance with the specific provisions of the Settlement Agreement and the Court's orders, as noted above.

Dated: May 6, 2015          s/Donovan W. Frank
                            DONOVAN W. FRANK
                            United States District Judge