# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| James and Lorie Jensen, as parents, guardians, and next friends of Bradley J. Jensen; James Brinker and Darren Allen, as parents, guardians, and next friends of Thomas M. Allbrink; Elizabeth Jacobs, as parent, guardian, and next friend of Jason R. Jacobs; and others similarly situated, | Civil No. 09-1775 (DWF/BRT) |
| Plaintiffs, | |
| v. | **ORDER** |
| Minnesota Department of Human Services, an agency of the State of Minnesota; Director, Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Clinical Director, the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Douglas Bratvold, individually and as Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Scott TenNapel, individually and as Clinical Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; and the State of Minnesota, | |
| Defendants. | |

Shamus P. O'Meara, Esq., and Mark R. Azman, Esq., O'Meara Leer Wagner & Kohl, PA, counsel for Plaintiffs.

Scott H. Ikeda, Aaron Winter, and Anthony R. Noss, Assistant Attorneys General, Minnesota Attorney General's Office, counsel for State Defendants.

## INTRODUCTION

This matter is before the Court on Defendants' objection to the Court's continuing jurisdiction over this matter. On April 5, 2017, the Court directed the parties to brief this issue and to submit a proposed briefing schedule for the Court's approval. (Doc. No. 626.) On April 18, 2017, the Court imposed a briefing schedule. (Doc. No. 630.) The parties have fully briefed the issue. (*See* Doc. Nos. 631, 634, 635, 637.) For the reasons set forth below, the Court overrules Defendants' objection.

## BACKGROUND

This case began nearly eight years ago, on July 10, 2009, when Plaintiffs filed a Complaint against Defendants asserting multiple violations of federal and state law arising out of allegations of "abusive, inhumane, cruel and improper use of seclusion and mechanical restraints routinely imposed upon patients of the Minnesota Extended Treatment Options program (METO)."[1] (Doc. No. 1 at 2.) Following extensive negotiations, the parties entered into a Stipulated Class Action Settlement Agreement ("Agreement") which was approved by the Court on December 5, 2011. (*See* Doc. Nos. 104, 136.)

The Agreement provides for the closure of the METO facility, establishes requirements regarding restraint and seclusion at successor facilities, and establishes

---

[1] On July 30, 2009, Plaintiffs filed an Amended Complaint arising out of these same allegations. (*See* Doc. No. 3 at 3.)

requirements for the Department of Human Services ("DHS") to internally and externally monitor restraint use. (*See* Doc. No. 136-1 ("Agreement") at 6-13.) The Agreement also provides that the State shall exercise "best efforts" for appropriate discharge of residents to the most integrated setting through transition planning. (*Id.* at 13-14.) In addition, the Agreement imposes requirements relating to other practices at METO and its successor facilities such as staff training. (*Id.* at 14-16.)

Beyond the provisions applicable to METO and its successors, the Agreement also includes a section entitled "System Wide Improvements." (*See id.* at 16-21.) This section identifies goals and objectives in the areas of long-term monitoring, crisis management, and training. (*Id.* at 16-17.) In addition, this section imposes requirements related to the creation of an *Olmstead* Plan which was agreed to be developed and implemented within eighteen months of the Agreement's approval. (*Id.* at 18.) The Agreement also establishes requirements relating to two other state facilities, the modernization of state administrative rules relating to positive behavioral supports ("Rule 40"), and the substitution of offensive terminology in DHS publications. (*Id.* at 19-21.)

In its December 1, 2011 Fairness Hearing regarding the Agreement, the Court stated:

> I find it to be fair, reasonable and adequate and will also serve the public interest, as well as the interests of the Class Members. Of course that carries with it . . . a responsibility on the parties and the public has a right to hold the Court to its responsibility to follow its oath and to make this Agreement mean something with the jurisdiction of the Court.

> And obviously, enough people have spoken today, so it is not surprising that, obviously, many of you will have a watchful eye and careful scrutiny to see to it that this does what it says it is going to do, and what it is intended to do, and just isn't words on a legal document.
>
> And of course, by the agreement, the Court, by an agreement of all of the parties, the Court does reserve continuing jurisdiction for a minimum of a two-year period to enforce compliance with the provisions of the Agreement and the Judgment . . . .

(Doc. No. 146 at 75.)

On March 24, 2017, the Court held a status conference relating to Defendants' implementation of the *Olmstead* Plan which was developed by Defendants and approved by the Court in the intervening years following the Court's approval of the Agreement. (*See* Doc. No. 620.) At this status conference, Defendants' Counsel raised an objection to the Court's continuing jurisdiction over this case. Specifically, Defendants' Counsel argued that the Court has been without jurisdiction since December 2014. Counsel for Plaintiffs argued that the Court presently has jurisdiction. In light of Defendants' objection, the Court ordered briefing and now issues this order to resolve the dispute.

## DISCUSSION

### I.    Legal Standard

"Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. Fed. Deposit Ins. Corp.,* 915 F.2d 1171, 1174 (8th Cir. 1990). A court is required to dismiss an action if "at any time" it concludes it has no subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). "Jurisdictional issues, whether they involve questions of law or of fact, are for the court to decide." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). "Because jurisdiction is a threshold

issue for the court, the district court has 'broader power to decide its own right to hear the case than it has when the merits of the case are reached.'" *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995) (quoting *Bellecourt v. United States*, 994 F.2d 427, 430 (8th Cir. 1993), *cert. denied*, 510 U.S. 1109 (1994)). In particular, a court may "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730 (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d. Cir. 1977)). To evaluate whether it has jurisdiction, "a district court may make findings of fact." *Appley Bros. v. United States*, 164 F.3d 1164, 1170 (8th Cir. 1999). "As no statute or rule prescribes a format for evidentiary hearings on jurisdiction, 'any rational mode of inquiry will do.'" *Osborn*, 918 F.2d at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986)). The burden of establishing subject-matter jurisdiction rests with the plaintiff.[2] *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

## II. Federal Court Jurisdiction to Enforce Settlement Agreements

"Federal courts do not have automatic ancillary jurisdiction to enforce a settlement agreement arising from federal litigation." *Gilbert v. Monsanto Co.*, 216 F.3d 695, 699

---

[2] The Eighth Circuit has explained that "[i]f the defendant thinks the court lacks jurisdiction, the proper course is to request an evidentiary hearing on the issue." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). In the typical circumstance, this would be accomplished through the filing of a motion which "may be supported with affidavits or other documents." *See id.* A testimonial hearing involving witnesses may also be conducted if needed. *Id.*; *see also* Fed. R. Civ. P. 43(c) ("When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions."). Although no motion has been filed on this issue, the Court reviews Defendants' argument under the standard that would apply had a motion to dismiss been formally filed.

(8th Cir. 2000). Rather, a federal court has jurisdiction to enforce a settlement agreement only where "the parties' obligation to comply with the terms of the settlement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). The Eighth Circuit has consistently acknowledged this "well-established rule." *See W. Thrift & Loan Corp. v. Rucci*, 812 F.3d 722, 724 (8th Cir. 2016); *see also Roberts v. Ocwen Loan Servicing, LLC*, 617 F. App'x 613, 614 (8th Cir. 2015); *Jenkins v. Kan. City Mo. Sch. Dist.*, 516 F.3d 1074, 1080-82 (8th Cir. 2008). As the Supreme Court's opinion in *Kokkonen* suggests, courts applying this rule must look at the terms of the court's dismissal order to evaluate the scope of the court's ancillary jurisdiction. *See 4:20 Commc'ns, Inc. v. Paradigm Co.*, 336 F.3d 775, 778 (8th Cir. 2003) ("The issue of subject matter jurisdiction under *Kokkonen* turns on the language of the dismissal order, not on events prior to the dismissal.").

Where a court retains jurisdiction for a specified period of time, the court no longer has ancillary jurisdiction after that period ends. *Id.* During a period of retained jurisdiction, however, "the parties [are] at liberty . . . to request the [c]ourt for assistance in effecting the settlement, or in further extending its retention of jurisdiction." *Buettner v. Kunard, Barnett, Kakeldey & Gates, Ltd.*, Civ. No. 4-95-720, 1998 WL 668035, at *1 n.1 (D. Minn. Aug. 10, 1998); *see also Stewart v. O'Neill*, 225 F. Supp. 2d 6, 8-9 (D.D.C. 2002). Even where the parties agree to the court's retention of jurisdiction, a court is not

obligated to exercise continuing jurisdiction and may terminate its jurisdiction in its discretion. *See Arata v. Nu Skin Int'l., Inc.*, 96 F.3d 1265, 1269 (9th Cir. 1996).

Here, the Court's December 5, 2011 Final Approval Order for Stipulated Class Action Settlement Agreement, (Doc. No. 136), governs the scope of the Court's ancillary jurisdiction to enforce the settlement agreement. In this order, the Court granted Plaintiffs' Petition for Final Approval of Stipulated Class Action Settlement Agreement and dismissed the action with prejudice. (*Id.* at 2-3.) The Court also retained jurisdiction to enforce the Agreement in two ways. First, the Court provided that the Agreement was "expressly incorporated herein" and attached the Agreement to the order. (*Id.* at 2.) Second, the Court expressly retained jurisdiction over the Agreement as follows:

> [I]t is hereby ordered that the parties are directed to consummate the Agreement in accordance with its terms, and this Court hereby reserves continuing jurisdiction for the time period set forth in the Agreement to enforce compliance with the provisions of the Agreement and the Judgment, as well as ensuring proper distribution of Settlement payments.

(*Id.*) Under *Kokkonen* and relevant Eighth Circuit caselaw, the Court plainly retained ancillary jurisdiction to enforce the Agreement through this order. *See Kokkonen*, 511 U.S. at 381; *W. Thrift & Loan Corp.*, 812 F.3d at 724. The parties do not appear to dispute this conclusion. However, the parties dispute the scope of the Court's retained jurisdiction. Because the Court's order both incorporated the Agreement by reference and specifically reserved jurisdiction "for the time period set forth in the Agreement," (Doc. No. 136 at 2), the scope and duration of the Court's jurisdiction in this case depends upon the proper construction of the Agreement itself.

## III.    The Agreement's Jurisdictional Provision

The Agreement provides that it "shall be construed and enforced in accordance with applicable federal and Minnesota laws." (Agreement § XXI.)  Settlement agreements are contracts to which ordinary principles of contract interpretation apply. *See Sheng v. Starkey Labs., Inc.*, 53 F.3d 192, 194 (8th Cir. 1995); *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581-82 (Minn. 2010).  Federal courts evaluating settlement agreements apply the forum state's law.  *See Am. Prairie Const. Co. v. Hoich*, 594 F.3d 1015, 1023 (8th Cir. 2010).  Neither party disputes that Minnesota law applies.

"Under Minnesota law, 'the primary goal of contract interpretation is to determine and enforce the intent of the parties.'" *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 818 F.3d 356, 361 (8th Cir. 2016) (citation omitted).  "Where the parties express their intent in unambiguous words, those words are to be given their plain and ordinary meaning." *Id.* (citation omitted).  Therefore, a court "must first make a legal determination whether the contract is ambiguous—i.e., 'whether the language used is reasonably susceptible of more than one meaning.'" *Swift & Co. v. Elias Farms, Inc.*, 539 F.3d 849, 851 (8th Cir. 2008) (quoting *Blattner v. Forster*, 322 N.W.2d 319, 321 (Minn. 1982)).  A court should "construe a contract as a whole and attempt to harmonize all of its clauses." *Storms, Inc. v. Mathy Const. Co.*, 883 N.W.2d 772, 776 (Minn. 2016). In addition, unambiguous provisions should not be given "a strained construction." *Id.* (quoting *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 364-65 (Minn. 2009)).  The presence or absence of ambiguity in a contract "depends, not upon words or phrases read in isolation, but rather upon the meaning assigned to the words or phrases in

accordance with the apparent purpose of the contract as a whole." *Art Goebel, Inc. v. N. Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997).

The Agreement provides the following regarding the Court's jurisdiction:

> The Court shall retain jurisdiction over this matter for two (2) years from its approval of this Agreement for the purposes of receiving reports and information required by this Agreement, or resolving disputes between the parties to this Agreement, or as the Court deems just and equitable.

(Agreement § XVIII.B.) This section continues with the following provision regarding Plaintiffs' right to extend reporting requirements:

> Should Plaintiffs believe a pattern and practice of substantial non-compliance with Attachment A exists, the State and Plaintiffs shall meet and confer in an effort to resolve any such concerns. The meet and confer shall be held no later than sixty (60) days prior to the two year anniversary of the Court's approval. Should Plaintiffs continue to believe a pattern and practice of substantial non-compliance with Attachment A exists, Plaintiffs may, within thirty (30) days thereafter, file a motion with the Court to extend the reporting requirements to the Court under this Agreement for an additional one (1) year.

(*Id.*) The Agreement also provides that "This Agreement shall terminate at the same time as the court's jurisdiction ends under paragraph B above . . . ."[3] (*Id.* § XVIII.E.) The parties offer competing interpretations of the Agreement's jurisdictional provisions.

Defendants argue that the Agreement provides for court jurisdiction no later than December 4, 2014—two years following the Agreement's approval plus a one-year

---

[3] This sentence states in full: "This Agreement shall terminate at the same time as the court's jurisdiction ends under paragraph B above, provided that the Department shall continue to fund the fifteen (15) Community Support Services positions, the External (OHFC) Reviewer and the Third Party Experts through Fiscal Year 2015 (ending June 30, 2015) and provided further that the releases contained herein shall remain in effect, except to the extent any party's participation is voided by the court pursuant to a defendant's Motion to Void Participation under either Section XVII. F. 2 or XVII. G., or a plaintiff's Motion to render null and void all provisions of the Settlement Agreement under Section XVII. G." (Doc. No. 136-1 ("Agreement") § XVIII.E.)

potential extension of reporting requirements following a motion by Plaintiffs. Specifically, Defendants argue that the first sentence of § XVIII.B clearly and unambiguously provides for a two-year period of retained jurisdiction.  In Defendants' view, "[a]fter authorizing the initial two-year retention of jurisdiction, this sentence sets forth three categories of 'purposes' of the Court's jurisdiction retention:  (1) receiving reports; (2) resolving disputes; and (3) purposes the Court deems 'just and equitable.'" (Doc. No. 631 at 18.)

Plaintiffs, on the other hand, argue that the Agreement authorizes continuing court jurisdiction beyond a two-year period.  Construing the first sentence of § XVIII.B, Plaintiffs argue that "[t]he parties' intentional use of a comma followed by the disjunctive 'or' in the clause: *', or as the court deems just and equitable*' clearly authorizes the Court's retention of jurisdiction over the settlement 'as it deems just and equitable,' not just for a [sic] two years."  (Doc. No. 634 at 27.)  Plaintiffs also note that the Court has previously construed this term consistent with Plaintiffs' interpretation and argue that the law of the case thus applies to this issue.[4]

Defendants argue that Plaintiffs' (and the Court's) interpretation of the "just and equitable" clause is contrary to the Agreement's plain language and renders the Agreement's specific jurisdiction retention provisions meaningless.  Defendants assert that "[i]f the parties wanted jurisdiction to continue indefinitely at the Court's discretion, it does not make sense that they would have provided for a definite initial jurisdiction

---

[4]     The Court declines to apply law of the case principles to this issue as it has not been squarely addressed by the parties until this point in the litigation.

period of two years, or outlined a detailed motion procedure upon which Plaintiffs might receive another definite period of an additional year." (Doc. No. 631 at 19.) Defendants also point out that the possible third year of jurisdiction was limited to reporting requirements. Construed as a whole, Defendants argue, the Agreement must be interpreted as they propose. Any other reading, they suggest, would not harmonize the clauses of the contract and would improperly dissect the contract's terms. Finally, Defendants' argue that Plaintiffs' reliance on the word "or" does not contradict Defendants' view that "the pertinent language is part of a list of three 'purposes.'" (Doc. No. 637 at 6.) Instead, Defendants contend, Plaintiffs' reading is an attempt to rewrite the Agreement's terms.

The Court concludes that the Agreement is ambiguous because the provision governing jurisdiction is "reasonably susceptible of more than one meaning." *Swift & Co.*, 539 F.3d at 851 (quoting *Blattner*, 322 N.W.2d at 321). Specifically, the Court determines that the Agreement can reasonably be read as Defendant proposes:

> The Court shall retain jurisdiction over this matter for two (2) years from its approval of this Agreement for the purposes of
> - receiving reports and information required by this Agreement,
> - or resolving disputes between the parties to this Agreement,
> - or as the Court deems just and equitable.

(Agreement § XVIII.B.) However, the Court also concludes that Plaintiffs' suggested reading is a reasonable one:

> The Court shall retain jurisdiction over this matter
> - for two (2) years from its approval of this Agreement for the purposes of receiving reports and information required by this Agreement, or resolving disputes between the parties to this Agreement,
> - or as the Court deems just and equitable.

11

(*Id.*)  The plain language of this provision could reasonably be interpreted according to either meaning.

At the same time, however, the Court acknowledges that neither party's interpretation makes complete grammatical sense.  Specifically, Defendants' proposed interpretation results in the following construction of the "just and equitable" language: "The Court shall retain jurisdiction over this matter for two (2) years from its approval of this Agreement for the purposes of . . . as the Court deems just and equitable."  To sensibly construe this language as Defendants suggest, the Court must ignore the words "of" and "as" or instead read in additional language to clarify that this clause refers to "purposes the Court deems just and equitable."  Plaintiffs' proposed reading also requires the Court to conclude that the parties used a comma before the "just and equitable" clause where a semicolon would have more clearly conveyed the meaning Plaintiffs suggest. *See* The Chicago Manual of Style Online § 6.58 (16th ed. 2010) ("When items in a series themselves contain internal punctuation, separating the items with semicolons can aid clarity.  If ambiguity seems unlikely, commas may be used instead." (internal cross-references omitted)).

Further, the Court finds that the Agreement as a whole does not foreclose either party's interpretation.  In particular, the Court disagrees with Defendants that Plaintiffs' interpretation renders other portions of the Agreement meaningless.  In light of the "apparent purpose of the contract as a whole," the Court finds it reasonable that the parties would have adopted Plaintiffs' proposed interpretation. *See Art Goebel, Inc.*, 567

N.W.2d at 515.  Specifically, the Agreement had the apparent purposes of not only eliminating the usage of restraints at the METO facility but also implementing multiple system-wide remedies to improve the lives of individuals with disabilities statewide.  As a result, the Court concludes that the Agreement's provisions providing for a two-year retention of jurisdiction and the possibility of a third year of reporting requirements can coexist alongside a broader grant of jurisdiction "as the Court deems just and equitable." The more specific provisions are not rendered meaningless as they dictated the parties' expectations regarding the scope of jurisdiction at the time the Agreement was adopted. However, the "just and equitable" clause can reasonably be construed as a fallback provision intended to apply as the circumstances warranted going forward.

In short, "[e]ach argument tends to support the interpretation favored by the party that advances it, but neither is conclusive."  *Swift & Co.*, 539 F.3d at 852.  In other words, "[t]he parties simply have signed an agreement that is not clear on its face."  *Id.*  Thus, the Court concludes it is proper to consider extrinsic evidence to interpret the Agreement and determine the parties' intent.

**IV.    Extrinsic Evidence to Discern the Parties' Intent**

Once a court has concluded that a contract is ambiguous, it may then attempt to discern the parties' intent by considering extrinsic evidence.  *See Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 470 (8th Cir. 2004).  Specifically, a court may "look[] at surrounding circumstances and the parties' own subsequent conduct." *Loftness*, 818 F.3d at 362 (quoting *Fredrich v. Indep. Sch. Dist. No. 720*, 465 N.W.2d 692, 695 (Minn. Ct. App. 1991)).  The parties' subsequent conduct is highly probative in

conducting this inquiry. *See id.* ("The most probative evidence is the actions of the parties afterwards.") (quoting *Fredrich*, 465 N.W.2d at 695)); *see also Fredrich*, 465 N.W.2d at 696 ("[T]he interpretation the parties themselves place on the contract is entitled to great, perhaps controlling, weight in ascertaining the terms of the contract."). "The terms of an ambiguous contract, which is not a contract of adhesion, are construed against the drafter only after the evidence fails to reveal the mutual intent of the parties." *Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.*, No. A16-1146, 2017 WL 1316142, --- N.W.2d ---, at *10 (Minn. Ct. App. Apr. 10, 2017).

To aid the Court's interpretation of the "just and equitable" clause, Plaintiffs provide evidence in the form of a declaration by Plaintiffs' counsel and attached exhibits. Plaintiffs also direct the Court to the procedural history in this matter to support their view that the Court presently has jurisdiction. Citing numerous examples in the record, Plaintiffs point out that Defendants have repeatedly "asked the Court to exercise its authority over the settlement for their benefit." (Doc. No. 634 at 3 n.5.) Plaintiffs also reference Defendants' routine failure to appeal or challenge the Court's orders, including those extending jurisdiction. In light of the long history of settlement implementation between the parties, Plaintiffs argue that "[D]efendants' new claim that the Court lacks authority over the settlement is incredulous, misleading, and meritless."[5] (*Id.*)

---

[5] Plaintiffs also focus much of their briefing on the history of Defendants' non-compliance, and the Court's extension of jurisdiction as a sanction against Defendants. The Court will not recount this procedural history here as it does not materially impact the Court's analysis of Defendants' jurisdictional objection.

Defendants primarily argue that the Agreement unambiguously favors their interpretation and put forward no specific extrinsic evidence to aid in resolving any ambiguity. However, Defendants ask the Court to adopt an interpretive canon to resolve any ambiguity that exists: "To the extent the Court concludes the [Agreement] is ambiguous and considers Plaintiffs' counsel's affidavit, . . . the meaning of the 'just and equitable' language must be construed against Plaintiffs because Plaintiffs' counsel asserts that Plaintiffs included that language in the [Agreement]." (Doc. No. 637 at 8 n.5.) Defendants do not otherwise rebut or question the veracity of Plaintiffs' counsel's affidavit and associated exhibits.

The Court concludes that the extrinsic evidence, including the evidence regarding the purpose of the "just and equitable" clause and the parties' post-agreement conduct, establishes that the parties agreed that "[t]he Court shall retain jurisdiction over this matter . . . as the Court deems just and equitable." (Agreement § XVIII.B.)

First, Plaintiffs' counsel offers an unchallenged declaration regarding the inclusion of the language at issue in the Agreement. According to Plaintiffs' counsel:

> I negotiated the Settlement Agreement on behalf of the Settlement Class. I included the retention of jurisdiction language in the agreement, at section XVIII.B, which states ', or as the Court deems just and equitable' because I was concerned that the Court retain authority to address potential non-compliance and delay beyond the implementation dates in the settlement, mindful of the complexities involved in the coordination of multiple state agencies and counties for the development and implementation of a statewide Olmstead Plan and the modification of Rule 40 and related administrative rulemaking needed for these settlement areas. The parties agreed to the settlement with this language and defendants never raised any concern about it.

(Doc. No. 635 ("O'Meara Decl.") ¶ 1.) Absent contrary evidence regarding the meaning

of this language, the Court is persuaded that this evidence supports Plaintiffs' interpretation of the Court's retention of jurisdiction under the Agreement.

Second, the parties' conduct throughout this litigation in implementing the Agreement provides strong evidence of the parties' mutual intent regarding the scope of the Court's jurisdiction and the meaning of § XVIII.B's "just and equitable" clause.[6] As Plaintiffs' counsel indicates in his declaration, Defendants repeatedly invoked Court authority and were actively engaged in reporting, mediation, planning, and dialog "for many years following the settlement's approval, never indicating they believed the Court had no jurisdiction," except for one limited circumstance. (*Id.* ¶ 2.)

Plaintiffs also identify specific instances in which Defendants acknowledged or agreed to the Court's jurisdiction. On August 6, 2013, for example, Plaintiffs' counsel e-mailed Defendants' counsel and the Court Monitor to support the position that the Court should extend its jurisdiction "no less than one year." (*Id.* ¶ 8, Ex. D.) In this same e-mail, Plaintiffs' counsel wrote, "We believe the Court should determine the length of the extension based upon its review of the ongoing issues regarding settlement implementation, non-compliance and any other information the Court believes is

---

[6]    Importantly, the Court does not rely upon the parties' conduct to support that Defendants have waived an objection to subject-matter jurisdiction or that Defendants consented to the Court's jurisdiction where it did not otherwise exist. *See 4:20 Commc'ns, Inc. v. Paradigm Co.*, 336 F.3d 775, 778 (8th Cir. 2003) ("[P]arties may not expand the limited jurisdiction of the federal courts by waiver or consent."). Rather, the Court relies on the parties' conduct as extrinsic evidence to aid in clarifying the ambiguity in the Agreement regarding the meaning of § XVIII.B. *See Fredrich v. Indep. Sch. Dist. No. 720*, 465 N.W.2d 692, 696 (Minn. Ct. App.1991) ("[T]he interpretation the parties themselves place on the contract is entitled to great, perhaps controlling, weight in ascertaining the terms of the contract.").

16

important to consider in making its determination." (*Id.*) Two days later, on

August 8, 2013, Defendants' counsel wrote to the Court Monitor and Plaintiffs' counsel

that "The Department will agree that the Court's jurisdiction over the settlement

agreement may be extended from December 31, 2013 to December 31, 2014." (O'Meara

Decl. ¶ 7, Ex. C.) In addition, Plaintiffs provided a copy of a proposed order submitted

on behalf of the Court Monitor and DHS on January 26, 2015 which states that "The

Court has jurisdiction over the subject matter of this action, the parties, and the class."

(O'Meara Decl. ¶ 6, Ex. B.)

The Court's own review of the record and the history of the parties' actions in this

matter also reveals probative evidence of the parties' intent regarding the Court's

retention of jurisdiction under the Agreement. On July 17, 2012, the Court issued an

order appointing the Court Monitor in response to concerns over Defendants'

noncompliance with the Agreement and explained that "[t]he Approval Order provides

that the 'Court shall retain jurisdiction over this matter for two (2) years from approval of

this Agreement' both to receive reports and information and also 'as the Court deems just

and equitable.'"[7] (Doc. No. 159 at 4 (quoting Agreement § XVIII.B).)

On August 27, 2013, the Court extended its jurisdiction to December 4, 2014,

consistent with the parties' agreement described above. (*See* Doc. No. 223 at 3; *see also*

Doc. No. 224 at 3.) The Court specifically stated that it did so "pursuant to

---

[7]     The Court notes that its explanation of the Agreement's jurisdictional provision in this order could be read to support Defendants' proposed interpretation of § XVIII.B. However, in subsequent orders, the Court clearly adopted the interpretation Plaintiffs propose. The Court finds that this only further supports that § XVIII.B is reasonably susceptible to multiple interpretations and is therefore ambiguous.

Section XVIII.B. of the Settlement Agreement." (*Id.*) Notably, the Court also stated that it "expressly reserves the authority and jurisdiction to order an additional extension of jurisdiction, depending upon the status of compliance by the Defendants with the specific provisions of the Settlement Agreement, absent stipulation of the parties." (*Id.*) On January 22, 2014, in an order addressing the development of an Implementation Plan, the Court again "reserve[d] the right to extend the jurisdiction of this Court beyond December 2014." (Doc. No. 266 at 6.)

On July 24, 2014, Plaintiffs submitted a letter to the Court in response to the Court Monitor's June 20, 2014 *Community Compliance Review* and Defendants' proposed *Olmstead* Plan. (Doc. No. 332; *see also* Doc. No. 313.) In this letter, Plaintiffs' counsel stated "[w]e respectfully suggest that the Court consider extending its jurisdiction over the Settlement by a sufficient time period to ensure sufficient compliance." (*Id.* at 8.) On August 22, 2014, Defendants responded to Plaintiffs' letter, stating: "Given the Department's substantial compliance efforts on the JSA/CPA and the impending closure of the Cambridge facility, the Department respectfully suggests that further discussion takes place before any decisions are made to extend the Court's jurisdiction in this matter." (Doc. No. 338 at 4.)

On September 3, 2014, the Court issued an order addressing these letters, among other submissions. (*See* Doc. No. 340.) The Court determined that it was "obligated to take some action with the objective of increasing the Court Monitor's responsibilities to: (1) oversee Defendants and ensure their accountability; and (2) expedite prompt and meaningful compliance." (*Id.* at 9.) As a result, the Court explained that it would

"extend its jurisdiction for a period of at least two additional years." (*Id.*) The Court

went on to explain that "[t]he Settlement Agreement provides that the Court's jurisdiction

would be determined 'as the Court deems just and equitable.'" (*Id.* (quoting Doc.

No. 104 at 39).) The Court referenced its previous extension of jurisdiction to

December 4, 2014 and its reservation of authority to further extend jurisdiction absent the

parties' agreement. (*Id.*) The Court explained:

> Extending the term of the Court's jurisdiction is clearly necessary based on
> the significant delays in implementation as well as the non-compliance with
> the Settlement Agreement. The Court concludes that at least a two-year
> extension is necessary in order for the Court to oversee and direct DHS to
> accelerate its efforts to comply with the Settlement Agreement and to fulfill
> the promises and proclamations made by DHS at the time of the fairness
> hearing when the Settlement Agreement was approved by the Court.

(*Id.* at 9-10.) Thus, the Court ordered the following:

> The Court Monitor shall serve for as long as necessary for Defendants to
> achieve substantial compliance. However, it is expected that Defendants
> will substantially comply with the Court's Orders by December 4, 2016.
> Pursuant to the Settlement Agreement § XVIII.B and § XVIII.E, and the
> Court's August 28, 2013 Order, the Court's jurisdiction is extended to
> December 4, 2016, and the Court expressly reserves the authority and
> jurisdiction to order an additional extension of jurisdiction, depending upon
> the status of the Defendants' compliance and absent stipulation of the
> parties.

(*Id.* at 14.)

Between February 10, 2016 and February 18, 2016, the parties filed proposals

regarding a revised reporting schedule to facilitate Defendants' reporting to the Court on

the *Olmstead* Plan and the implementation of the Agreement. (*See* Doc. Nos. 537-43.)

Defendants' proposal for reporting on the Agreement provided for semi-annual reporting

to be due on August 31 and February 28. (*See* Doc. No. 539 at 4.) In addition, this

proposal provided for annual reports to cover the period of January 1 to December 31 which would be due on March 31. (*Id.*) With respect to *Olmstead* Plan reporting, Defendants proposed quarterly status reports to be due on May 31, August 31, November 30, and February 28, with the first such report to be due on February 29, 2016. (Doc. No. 540-1 at 6-7.) Defendants also proposed submitting annual reports covering an October 1 through September 30 period due each year on December 31. (*Id.* at 7; *see also* Doc. No. 543.) On February 22, 2016, the Court issued orders establishing a reporting schedule for both the *Olmstead* Plan and the Agreement. (Doc. Nos. 544, 545.) Both orders included the following provision extending the Court's jurisdiction:

> Based on all of the above and the current status of this matter, and pursuant to the Settlement Agreement § XVIII.B and the Court's September 3, 2014 Order (Doc. No. 340), the Court's jurisdiction is extended to December 4, 2019. The Court expressly reserves the authority and jurisdiction to order an additional extension of jurisdiction, depending upon the status of Defendants' compliance and absent stipulation of the parties.

(Doc. No. 544 at 8; Doc. No. 545 at 6.)

On March 18, 2016, the Court imposed verification and reporting requirements upon Defendants and identified specific verification duties for the Court Monitor. (Doc. No. 551.) In this order, the Court stated the following regarding its jurisdiction:

> On December 5, 2011, the Court approved the parties' Stipulated Class Action Settlement Agreement . . . and reserved jurisdiction over this matter 'to enforce compliance with the provisions of the Agreement.' The *Jensen* Settlement Agreement provided that the Court would retain jurisdiction for two years 'or as the Court deems just and equitable.' The Court has since extended its jurisdiction on three occasions, most recently extending its jurisdiction to December 4, 2019. The Court is hopeful that substantial compliance with the *Jensen* Settlement Agreement will be achieved by this date.

(*Id.* at 2 (citations omitted).)

In light of this procedural history and the parties' actions throughout this litigation, the Court finds that the parties intended the Court to retain authority to exercise jurisdiction as it deems just and equitable. In particular, neither Plaintiffs nor Defendants objected to the Court's continuing jurisdiction after the Court issued orders extending its jurisdiction pursuant to § XVIII.B. Similarly, neither party objected when the Court repeatedly "reserve[d] the authority and jurisdiction to order an additional extension of jurisdiction, depending upon the status of Defendants' compliance and absent stipulation of the parties." (*See, e.g.*, Doc. No. 544 at 8.) No objections were raised concerning the Court's orders that indicated an interpretation of the "just and equitable clause" consistent with Plaintiffs' proposed interpretation. Further, notwithstanding Defendants' current argument that § XVIII.B plainly contemplates jurisdiction ending no later than December 4, 2014, the parties have acted for many months—in fact, years—since this date as if the Court had jurisdiction. Indeed, in February 2016, Plaintiffs and Defendants each proposed detailed reporting schedules contemplating periodic and annual reporting obligations into the future when jurisdiction had at that time been extended to only December 4, 2016.

In short, the parties' actions demonstrate their mutual intent regarding the Court's continuing jurisdiction over this case. The parties' consistent recognition of the Court's jurisdiction throughout the extensive and complex procedural history of this matter since December 4, 2014 cannot be reconciled with the narrow interpretation of § XVIII.B Defendants now propose. As the Court previously concluded, the Agreement's

jurisdictional provision is reasonably susceptible to both meanings proposed by the parties.  In light of the extrinsic evidence, and particularly the parties' post-agreement conduct, however, the Court finds that Plaintiffs' proposed interpretation reflects the parties' intent.[8]

## CONCLUSION

On December 5, 2011, the Court approved the Agreement and dismissed the claims against Defendants, "reserv[ing] continuing jurisdiction for the time period set forth in the Agreement."  (Doc. No. 136 at 2.)  Because § XVIII.B. of the Agreement contemplated the Court's retention of jurisdiction for a two-year period or "as the Court deems just and equitable," the Court concludes that its previous extensions of jurisdiction in this matter were proper exercises of the Court's authority.  Thus, the Court presently retains jurisdiction over this matter, and Defendants' objection to the Court's jurisdiction is overruled.

Although the Court concludes that it presently has jurisdiction, it acknowledges that the protracted nature of this litigation and the long history of settlement implementation has resulted in continued judicial oversight well beyond the initial minimum two-year period contemplated by the parties.  The Court must also observe, however, that the extensions of jurisdiction in this matter have largely been attributable to Defendants' own admitted non-compliance and delays in implementing the Agreement.

---

[8]     Because the evidence and the record reveals the parties' intent, the Court need not apply the interpretive canon that requires construing ambiguity against the drafting party. *See Swift & Co. v. Elias Farms, Inc.*, 539 F.3d 849, 854 (8th Cir. 2008) ("[T]his rule applies only as a last resort, after all other evidence fails to demonstrate the intent of the parties.").

Without revisiting such non-compliance and focusing instead on the significant progress that has been achieved in recent years, the Court believes that the time has come to see this litigation to its end.

As the Court explained in its March 18, 2016 order, Defendants have implemented numerous internal mechanisms to oversee the implementation of the Agreement and improve the lives of individuals with disabilities in this state. (*See* Doc. No. 551 at 4-6.) The Court noted its hope that such measures could ultimately serve as a replacement for continuing Court oversight, stating "[w]hen the Court no longer exercises jurisdiction over the *Jensen* Settlement Agreement, quality oversight measures such as these will ensure that *Jensen*'s legacy is not left an empty promise." (*Id.* at 6.) With this aim in mind, the Court urges the parties to come together to evaluate what essential steps remain in the implementation of the Agreement before the Court terminates its jurisdiction over this matter.

## ORDER

Based upon the foregoing, **IT IS HEREBY ORDERED** that:

1. Defendants' objection to the Court's continuing jurisdiction is **OVERRULED**.

2. Absent further order of the Court, all reporting obligations previously imposed shall remain in place.

3. The Court will convene a bi-annual status conference in this matter in December 2017. Prior to this status conference, the parties shall meet and confer to

discuss the essential steps that remain in Defendants' implementation of the Agreement before the Court can equitably terminate its jurisdiction over this matter.

Dated:  June 28, 2017

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge