# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

James and Lorie Jensen, as parents, guardians, and next friends of Bradley J. Jensen; James Brinker and Darren Allen, as parents, guardians, and next friends of Thomas M. Allbrink; Elizabeth Jacobs, as parent, guardian, and next friend of Jason R. Jacobs; and others similarly situated,

        Plaintiffs,

v.

Minnesota Department of Human Services, an agency of the State of Minnesota; Director, Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Clinical Director, the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Douglas Bratvold, individually and as Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Scott TenNapel, individually and as Clinical Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; and the State of Minnesota,

        Defendants.

Civil No. 09-1775 (DWF/BRT)

**MEMORANDUM OPINION AND ORDER**

___

Shamus P. O'Meara, Esq., and Mark R. Azman, Esq., O'Meara Leer Wagner & Kohl, PA, counsel for Plaintiffs.

Scott H. Ikeda, Aaron Winter, Anthony R. Noss, and Michael N. Leonard Assistant Attorneys General, Minnesota Attorney General's Office, counsel for State Defendants.

___

## INTRODUCTION

This matter is before the Court on Defendants' Motion to Alter or Amend (Doc. No. 741 ("Motion")) the Court's June 17, 2019 Order (Doc. No. 737 ("June 2019 Order"). Plaintiffs oppose Defendants' Motion. (Doc. No. 751 ("Opp.").) For the reasons set forth below, the Court respectfully denies Defendants' Motion.

## BACKGROUND

The factual background for the above-entitled matter is clearly and precisely set forth in the Court's June 2019 Order and is incorporated by reference here. (*See* June 2019 Order.) The Court notes particular facts relevant to this Order below.[1]

The Court approved the parties' Stipulated Class Action Settlement Agreement (Doc. No. 136-1 ("Settlement Agreement")) on December 5, 2011, and has maintained jurisdiction over the Settlement Agreement ever since.[2] (Doc. No. 136.) The Court's jurisdiction was originally scheduled to end on December 4, 2013. (Settlement Agreement at Section XVIII.B.) On August 28, 2013, the Court extended its jurisdiction to December 4, 2014 because of ongoing concern with Defendants' noncompliance with

---

[1] The Court also supplements the facts as needed.

[2] On March 12, 2014, the Court formally adopted and approved a Comprehensive Plan of Action ("CPA") consisting of 104 evaluation criteria and accompanying actions designed to help direct and measure compliance. (*See generally* Doc. No. 284.) The combination of the Settlement Agreement and CPA is hereinafter referred to as the "Agreement."

the Settlement Agreement.  (Doc. No. 224 at 3.)  At that time, the Court stated that it "expressly reserve[d] the authority and jurisdiction to order an additional extension of jurisdiction, depending upon the status of compliance by the Defendants with the specific provisions of the Settlement Agreement, absent stipulation of the parties."  (*Id.*)

On September 3, 2014, the Court extended its jurisdiction again until December 4, 2016 because of continued concern with Defendants' noncompliance.  (Doc. No. 340 at 14.)  The Court expressly stated again that it "reserve[d] the authority and jurisdiction to order an additional extension of jurisdiction, depending upon the status of Defendants' compliance and absent stipulation of the parties."  (*Id.*)

On February 22, 2016, the Court extended its jurisdiction a third time until December 4, 2019.  (Doc. No. 545 at 6.)  The Court reiterated that it "reserve[d] the authority and jurisdiction to order an additional extension of jurisdiction, depending upon the status of Defendants' compliance and absent stipulation of the parties."  (*Id.*)

Defendants filed an objection to the Court's ongoing jurisdiction over this matter on April 28, 2017.  (Doc. No. 631.)  The Court overruled Defendants' objection on June 28, 2017.  (Doc. No. 638.)  Defendants appealed the Court's decision to the Eighth Circuit on July 26, 2017.  (Doc. No. 639.)  The Eighth Circuit affirmed this Court's jurisdiction on July 26, 2018, holding that that this Court may extend its jurisdiction as it deems "just and equitable."  (Doc. No. 695 at 12.)

On January 4, 2019, the Court amended Defendants' scheduled reporting requirements and required them to submit a comprehensive summary report ("Summary Report") to assess Defendants' overall compliance with the Agreement.  (*See generally*

3

Doc. No. 707.) The Court stated, "[a]s the December 4, 2019 date approaches, the Court must evaluate Defendants' compliance to assess the impact of the *Jensen* lawsuit on the well-being of its class members and *to determine whether the Court's jurisdiction may equitably end*." (*Id.* at 6 (emphasis added).) The Court advised that it would discuss the Summary Report at a Biannual Reporting Conference on April 16, 2019 ("Status Conference"). (*Id.* at 13.) Defendants timely submitted the Summary Report on March 19, 2019 and self-assessed as fully compliant with the Agreement. (Doc. No. 710.)

Prior to the Status Conference, both Plaintiffs and Consultants submitted letters detailing specific concerns with Defendants' reporting and potential areas of non- compliance with the Agreement. (*See* Doc. Nos. 726, 727, 730.) Defendants also submitted a letter, asking the Court to address the applicable legal standard the Court is using to determine the circumstances under which it will end its involvement in this matter, including what specific actions remain outstanding. (Doc. No. 731 ("Letter").) The day before the Status Conference, Plaintiffs filed a response to Defendants' Letter, specifically asking the Court to consider extending its jurisdiction. (Doc. No. 732 at 5.) The Court filed an agenda (Doc. No. 733 ("Agenda") for the Status Conference that identified specific areas of concern and directed Defendants to respond to these concerns during the Status Conference.[3] (Agenda at 5-6.)

---

[3] The Court directed Defendants to address the very concerns that formed the basis of its June 2019 Order. (*See* Agenda at 5-6 ("Defendants shall specifically address the following concerns and describe actions that will be taken to improve performance before

During the Status Conference, the Court specifically stated that the objective of the Status Conference was to assess Defendants' compliance with the Agreement, to identify next steps, and to determine whether "there was a way for the parties and the Court, as [ ]each deem[s] it just and equitable, to bring . . . the Court' s jurisdiction [over] this matter, to an end." (Doc. No. 740 ("Transcript") at 8-9.) The parties disagreed over the state of Defendants' compliance with the Agreement. While Defendants claimed that they were in full compliance with the Agreement and asked the Court to end its jurisdiction immediately (Transcript at 10, 11, 154), Plaintiffs argued that there were remaining areas of concern and that the Court needed additional information to determine whether its jurisdiction should be extended.[4] (*Id.* at 13, 14, 119, 123-126, 157.)

At the conclusion of the Status Conference, the Court advised that an Order identifying next steps would be forthcoming. (Transcript at 17-158.) The Court filed the Order on June 17, 2019. (June 2019 Order.) The June 2019 Order readdressed the Court's concerns and detailed specific actions necessary to alleviate those concerns. (*See* June 2019 Order.) The June 2019 Order also extended the Court's jurisdiction to

---

December 2019: (1) external verification of compliance; (2) documentation of use of data to inform policy decisions, and documentation of any such policy decisions, specifically with respect to: (a) wait times for admission to MLB housing; (b) wait times for movement to community placements after placement criteria have been met; and (c) under EC 88, the needs assessment(s) regarding the number of treatment homes; (3) continued use of restraint and seclusion, and documentation supporting compliance with EC 104; (4) the use of person-centered planning; and (5) the electronic data management system to track all information relevant to abuse/neglect investigations.).)

[4]    The Consultants also raised several areas of concern. (*Id.* at 103-115.)

September 15, 2020, pending receipt of the additional information necessary to determine whether issues of noncompliance remain. (*Id.* at 36.)

Defendants now move to amend or alter the June 2019 Order pursuant to Rule 59(e) of the Federal Rules of Civil Procedure with respect to the Court's extension of its jurisdiction.

## DISCUSSION

"Rule 59(e) motions serve a limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.' Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (internal quotations omitted); *see also Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998).[5] Relief under Rule 59(e) is granted only in "extraordinary" circumstances. *United States v. Young*, 806 F.2d 805, 806 (8th Cir. 1986). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life. Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan,* 987 F. Supp. 1063, 1069 (N.D.Ill.1997)).) The Court has considered the parties' arguments and concludes that there has been no manifest error of law or fact that would warrant altering or amending its June 2019 Order.

---

[5] A party may also move the Court to amend its findings or make additional findings. Fed. R. Civ. P. 52(b).

Defendants argue that the Court manifestly erred when the Court extended its jurisdiction because the Court did not give Defendants prior notice that it contemplated an extension, and the Court did not grant Defendants an opportunity to be heard regarding the Court's concerns underlying the extension. (Doc. No. 743 ("Def. Memo.") at 17.) In support of this argument, Defendants contend that: (1) the Court did not indicate in its written orders prior to the April 16 status conference that it contemplated extending its jurisdiction; (2) the Court did not specifically state during the Status Conference that it contemplated extending its jurisdiction; and (3) the Court did not identify noncompliance with the Settlement Agreement as a basis for the extension. (*Id.* at 18-19.) Defendants further contend if they had received notice that the Court contemplated extending its jurisdiction, they would have been able to address the Court's concerns without having to appoint an outside expert or participating in an additional meet and confer.[6] (*Id.* at 26-27.) Accordingly, Defendants ask that the Court vacate its June 2019 Order and terminate its jurisdiction over this matter. (*Id.* at 28.)

Plaintiffs argue that there is no basis under Rule 59 to amend or alter the June 2019 Order, and that Defendants' "simply want the Court to reconsider its decision extending jurisdiction."[7] (Opp. at 4.) They argue that pursuant to the Settlement

---

[6] Defendants attempt to address the Court's concerns in their Motion, in part relying on information subject to the same internal flaws that prompted the Court to require an external review. (Def. Memo. at 25-26.) As discussed below, this information does not alleviate the Court's concerns.

[7] Accordingly, Plaintiffs argue that Defendants should have filed a motion to reconsider pursuant to Local Rule 7.1(j).

Agreement, and as affirmed by the Eighth Circuit, the Court may extend its jurisdiction as it deems just and equitable. (*Id.* at 6.) Plaintiffs therefore contend that Defendants' motion is an improperly filed request for reconsideration on an issue already litigated and decided. (*Id.* at 12.) Plaintiffs also argue that Defendants' Motion fails on the merits because Defendants had ample notice and opportunities to be heard with respect to the Court extending its jurisdiction.[8] (*Id.* at 1, 8.)

The Court acknowledges that litigants are entitled to notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Post v. Harper*, 980 F.2d 491, 493 (8th Cir. 1992). Here, the Court finds that Defendants had ample notice that the Court contemplated extending its jurisdiction. (*See, e.g.*, Doc. Nos. 224, 340, 545.) The Court also finds that Defendants had sufficient opportunity to be heard regarding the contemplated extension. Indeed, a primary objective of the Summary Report and the Status Conference was to provide Defendants an opportunity to convey to the Court that its jurisdiction over this matter could come to a just and equitable end.

While Defendants now contend that they did not know or understand that the Court contemplated extending its jurisdiction, the record reflects that Defendants argued against that very thing during the Status Conference. (Transcript at 16 ("And so this suggestion . . . for the court to [ ] continue its jurisdiction indefinitely is nonsense").) Moreover, the Court has been clear that it will continue its jurisdiction over this matter until it determines that its jurisdiction may come to a just and equitable end.

---

[8] The parties also dispute the appealability of the June 2019 Order; however, the Court will address Defendants' Motion on the merits without engaging in the argument.

8

The Court specifically advised in its January 4, 2019 Order that it required a comprehensive Summary Report to assess the status of Defendants' compliance with the Agreement and to determine whether its jurisdiction could equitably end. (Doc. No. 707 at 6.) Prior to the Status Conference, the Court flagged specific areas of concern and directed Defendants to respond to its concerns during the Status Conference. Defendants responded to these concerns during the Status Conference, and argued that the Court had enough information to conclude that Defendants were in full compliance with the Agreement. At the conclusion of the Status Conference, the Court stated that it would issue an Order identifying next steps. The June 2019 Order readdressed the Court's concerns and provided specific actions necessary to alleviate those concerns.

It appears to the Court that Defendants' Motion is an attempt to reargue their position that they are in full compliance with the Agreement and that anything else they *could* do is beyond the scope of the Agreement. The Court has already considered these arguments and rejected them. As clearly set forth in its June 2019 Order, the Court requires additional information to properly conclude that its jurisdiction may come to a just and equitable end; accordingly, the Court has extended its jurisdiction pending verification. The Court's requirement that Defendants submit additional information is an opportunity for Defendants to show the Court that they have satisfied their obligations under the Agreement. Until the Court has sufficient information to draw such a conclusion, its jurisdiction simply cannot come to a just and equitable end.

As requested by Defendants in their Letter, the June 2019 Order identified specific actions that Defendants must take for the Court to conclude whether its jurisdiction may

end. One of those steps was to employ subject matter experts to conduct an external review of Defendants' compliance with respect to some areas of the Agreement. The Court explained that it could not conclude whether Defendants have complied with the obligations set forth in the Agreement because of concerns over lack of external verification. Because the "new" evidence Defendants submit in support of their Motion is subject to the same lack of external verification, it does nothing to alleviate the Court's concerns. The Court also explained that it requires additional information with respect to the scope of the Agreement. While Defendants again argue that the Court should rely on their interpretation, the Court already considered this argument and rejected it—finding instead that it requires additional information from each party to properly determine the scope of the Agreement.

As soon as the Court receives sufficient evidence that Defendants are in compliance with the Agreement, and that its jurisdiction may come to a just and equitable end, the Court will end its jurisdiction. While Defendants may not like the Court's decision to extend its jurisdiction, a manifest error of law is created by disregard, misapplication, or failure to recognize controlling precedent—not disappointment by an unhappy party. *See Oto*, 224 F.3d at 606 (internal citation omitted). In lieu of further delay, the Court encourages Defendants to take the steps necessary to verify its compliance with the Agreement, or to satisfy any unmet requirements.

The Court finds that Defendants have identified no "extraordinary" circumstances that warrant the relief requested. Specifically, Defendants offer no newly discovered evidence or law that merit reversal of its June 2019 Order. The Court concludes that

Defendants have failed to establish any manifest error of law or fact requiring amendment of its June 2019 Order. Accordingly, the Court respectfully denies Defendants' Motion.[9]

**ORDER**

Based on the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Alter or Amend the Court's June 17, 2019 Order (Doc. No. [741]) is **DENIED**.


Dated: August 28, 2019          s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge

---

[9] Alternatively, to the extent Defendants' brief may be construed as a request for reconsideration of the June 2019 Order, Defendants have failed to show compelling circumstances sufficient to permit such a motion. *See* L.R. 7.1(j).