# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| James and Lorie Jensen, as parents, guardians, and next friends of Bradley J. Jensen; James Brinker and Darren Allen, as parents, guardians, and next friends of Thomas M. Allbrink; Elizabeth Jacobs, as parent, guardian, and next friend of Jason R. Jacobs; and others similarly situated, | Civil No. 09-1775 (DWF/BRT) |
| Plaintiffs, | |
| v. | **ORDER** |
| Minnesota Department of Human Services, an agency of the State of Minnesota; Director, Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Clinical Director, the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Douglas Bratvold, individually and as Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Scott TenNapel, individually and as Clinical Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; and the State of Minnesota, | |
| Defendants. | |

Shamus P. O'Meara, Esq., and Mark R. Azman, Esq., O'Meara Leer Wagner & Kohl, PA, counsel for Plaintiffs.

Scott H. Ikeda, Aaron Winter, Anthony R. Noss, and Michael N. Leonard Assistant Attorneys General, Minnesota Attorney General's Office, counsel for State Defendants.

## INTRODUCTION

This matter is before the Court on Defendants' Motion to Stay Pending Appeal. (Doc. No. 784.) Plaintiffs oppose Defendants' motion.[1] (Doc. No. 791.) For the reasons set forth below, the Court denies Defendants' motion.

## BACKGROUND

The factual background for the above-entitled matter is clearly and precisely set forth in the Court's June 17, 2019 Order and is incorporated by reference here. (*See* Doc. No. 737 ("June 2019 Order").) The Court notes particular facts relevant to this Order below.[2]

On December 18, 2019, the Court issued an order in response to the parties' positions regarding the scope of their Stipulated Class Action Settlement Agreement (Doc. No. 136-1 ("Settlement Agreement")) with respect to prohibited restraints and compliance with the Positive Supports Rule.[3] (December 2019 Order.) The Court found that because the Agreement's definition of Facilities does not include the Forensic Mental

---

[1] The Court observes that the parties make several arguments that are nearly identical to those made in 2017 with respect to Defendants' Motion to Stay Pending Appeal (Doc. No. 655 ("2017 Motion").) The Court denied the 2017 Motion. (Doc. No. 674 ("2017 Denial").) While a similar analysis applies, the Court re-addresses the arguments in the context of its December 18, 2019 Order (Doc. No. 779 ("December 2019 Order").)

[2] The Court also supplements the facts as needed.

[3] On March 12, 2014, the Court formally adopted and approved a Comprehensive Plan of Action ("CPA") consisting of 104 evaluation criteria and accompanying actions designed to help direct and measure compliance. (Doc. Nos. 283, 284 ("CPA").) The combination of the Settlement Agreement and CPA is hereinafter referred to as the "Agreement."

Health Program ("FMHP") (formerly the Minnesota Security Hospital), or Anoka Metro Regional Treatment Center ("AMRTC"), those locations are not subject to the Agreement's strict prohibition on the use of restraint in all but extreme emergency situations. (*Id.* at 11-12.) Notwithstanding, the Court found that a separate provision of the Agreement requires Defendants to ensure that their use of restraint at FMHP and AMRTC reflects current best practices. (*Id.* at 12-14.) Recognizing the very real danger that inappropriate use of restraint poses to some of society's most vulnerable citizens, the Court ordered Defendants to conduct an external review of their use of restraint at FMHP and AMRTC to properly determine whether such use reflects current best practices and satisfies Defendants' obligations under the Agreement. (*Id.* at 15-16.)

On January 10, 2020, Defendants filed a Notice of Appeal of the Court's December 2019 Order. (Doc. No. 783.) On the same day, Defendants filed a Motion to Stay pending appeal. (Doc. No. 784.) Specifically, Defendants seek "an order staying their obligations related to the Court's Order Filed December 18, 2019 [] during the pendency of the appeal they filed with the Eighth Circuit Court of Appeals."[4] (*Id.* at 1.) Plaintiffs oppose Defendants' motion. (Doc. No. 791 ("Pl. Opp.").)

---

[4]  The December 2019 Order imposed three obligations on Defendants: (1) to jointly agree with Plaintiffs on an external reviewer, or to nominate two individuals Defendants would like to perform the external review if an agreement cannot be reached; (2) to engage the external reviewer "to address the extent to which Defendants' use of mechanical restraint at [FMHP] and [AMRTC] reflects current best practices, specifically quantifying the type, frequency, and duration of mechanical restraint at each location, and identifying whether Positive Supports were attempted prior to use; and (3) that the external reviewer's initial report must be completed "prior to March 13, 2020, unless a different date is adopted by the Court," and a final report be submitted after a comment

3

## DISCUSSION

I. **Legal Standard**

Pursuant to Federal Rule of Civil Procedure 62(c), a "court may suspend, modify, restore, or grant an injunction" pending the matter's resolution on appeal. *See* Fed. R. Civ. P. 62(c). "A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of the particular case." *Scripps-Howard Radio, Inc. v. F.C.C.*, 316 U.S. 4, 10-11 (1942) (citations omitted); *see also Nken v. Holder*, 556 U.S. 418, 433 (2009). A court considers four factors in determining whether to grant a motion to stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011). The moving party bears the heavy burden to establish that a stay should be granted in light of these four factors, and "[t]he first two factors . . . are the most critical." *See Nken*, 556 U.S. at 433-34; *see also* 11 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2904 (3d ed. April 2017 Update) ("[B]ecause the burden of meeting the

---

period. (December 2019 Order at 16-17.) Defendants fulfilled their first obligation by nominating two individuals to conduct the External Review after they were unable to reach an agreement with Plaintiffs. Accordingly, the Court interprets Defendants' Motion to Stay as applicable to the second and third obligations imposed by the December 2019 Order.

4

standard is a heavy one, more commonly stay requests will be found not to meet this standard and will be denied." (footnotes omitted)). "Ultimately, [the court] must consider the relative strength of the four factors, balancing them all." *Brady*, 640 F.3d at 789 (quotation marks and citation omitted).

Defendants argue that the four stay factors warrant the imposition of a stay with respect to their obligations under the December 2019 Order. Plaintiffs, on the other hand, argue that Defendants have not met their burden to justify a stay and ask the Court to deny Defendants' motion.[5]

### A. Likelihood of Success on the Merits

The Court first considers whether Defendants have "made a strong showing that [they are] likely to succeed on the merits." *Hilton*, 481 U.S. at 776. "It is not enough that the chance of success on the merits be better than negligible. . . . [M]ore than a mere possibility of relief is required." *Nken*, 556 U.S. at 434 (quotation marks and citations omitted). The Eighth Circuit has described this factor as "[t]he most important" for the court's consideration. *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998); *see also Brady*, 640 F.3d at 789.

---

[5] Plaintiffs also argue in a footnote that Rule 62(c) does not apply because the Court's Order Approving Settlement is not an injunction. Rather, Plaintiffs contend, "the applicable court action involved approval of a voluntary settlement agreement." (Pl. Opp. at 18-19 n.7.) However, Defendants seek to stay their obligations under the Agreement as well as the Court's subsequent orders. The Court's orders adopting the CPA and directing Defendants to follow specific reporting schedules, as well as its orders requiring supplemental information, for example, are plainly injunctive in nature and direct Defendants to undertake specific actions to facilitate the Agreement's implementation. (*See* Doc. Nos. 284, 544, 545, 707, 737.) Thus, the Court concludes that Rule 62(c) properly applies to Defendants' Motion to Stay Pending Appeal.

5

Defendants contend that they are likely to succeed on the merits because: (1) the external reviewer function is limited to the Facilities as defined by the Agreement; (2) the Agreement does not require restraint use at any particular location to reflect current best practices; (3) use of restraint at AMRTC is immune from review because Defendants do not license that location; (4) the December 2019 Order erroneously places the burden to demonstrate compliance on Defendants; and (5) the December 2019 Order violates Defendants' due process rights. (Doc. No. 787 ("Def. Memo.") at 12-19.)

Plaintiffs cite ongoing noncompliance issues that required the Court to appoint an independent Court Monitor to conduct external reviews. (Pl. Memo. at 1-2, 20.) Plaintiffs also contend that because an external review of mechanical restraint use at FMHP and AMRTC was previously done in 2013, it is consistent with the Court's authority to order a subsequent evaluation of those locations. (*Id.*) Plaintiffs assert that Defendants' objection to the Court's authority to conduct an external review is a tactic to avoid correcting its conduct that compromises the safety and well-being of vulnerable persons. (*Id.* at 2, 20.)

The Court finds that Defendants have failed to establish a strong likelihood of success on the merits on appeal. To begin with, the external review is not a new concept, nor has external review been limited to Facilities as defined in the Agreement. Nearly eight years ago in July 2012, the Court observed there was "clearly a need for a process to investigate potentially conflicting information, provide a coherent and complete presentation, and make recommendations to the Court." (Doc. No. 159 at 9-10.) The Court subsequently appointed David Ferleger ("Ferleger") to fill that role as a Court

Monitor. (*Id.* at 10.) On April 25, 2013, the Court ordered that the role of the Court Monitor subsume the External Reviewer function set forth in Section VII.B. of the Settlement Agreement.[6] (Doc. No. 212 at 6.) Defendants did not object to the Court appointment of the Court Monitor as the External Reviewer and agreed to fund associated costs. (Doc. No. 531 at 32.) On September 3, 2014, the Court increased the Court Monitor's responsibilities to: (1) oversee Defendants and ensure their accountability; and (2) expedite prompt and meaningful compliance. (Doc. No. 340 at 8-9, 14.) Over the years, the Court Monitor submitted a number of reports with findings of noncompliance or items that could not be verified. (*See, e.g.*, Doc. Nos. 236, 327, 347, 374, 388, 414, 604.) One report, entitled *Restraint Chair and Seclusion Use at AMRTC and MSH: Phase 1*, cited multiple violations related to restraint and seclusion at AMRTC and FMHP. (Doc. No. 236.)

In March 2016, the Court stayed the bulk of the Court Monitor's duties in response to Defendants' commitment to new internal structures. (Doc. No. 551 at 3, 24.) In June 2016, the parties discussed revising the External Function set forth in the Agreement; however, they were unable to agree on how to amend it. (Doc. No. 578.) Consequently, the Court ordered that the Court Monitor would continue to fill the External Reviewer role. (*Id.* at 3.) Because the Court Monitor's duties, including his role as External Reviewer, were currently stayed, the Court reserved the right to order that the

---

[6] The External Reviewer function, required pursuant to the Settlement Agreement, was still not in place as of September 17, 2012. (Doc. No. 165 at 27.) The position remained unfilled throughout 2012 and into 2013. As a result, external reviews contemplated by the Settlement Agreement were not delivered.

7

Court Monitor's duties resume or to make further modifications to the Court Monitor's duties at any time consistent with the Court's discretion. (*Id.* at 3-4.)

In September 2016, the Court lifted the stay on the Court Monitor's duties and directed him to conduct a review of Defendants' recent reports to assess substantial compliance with regard to all components of the Agreement. (Doc. No. 595 at 2-3.) The Court Monitor found several areas of noncompliance and multiple others that were inconclusive. (Doc. No. 604.) Defendants objected to the Court Monitor's findings, and to Ferleger's continued monitoring. (Doc. No. 606-2 at 6-8.) In January 2017, the Court held a Status Conference to discuss the Court Monitor's findings and Defendants' opposition to continued monitoring. (*See* Doc. Nos. 608, 611.) The Court once again stayed the Court Monitor's duties pending submission of Defendants' next two Compliance Reports, but reserved the right to re-engage the Court Monitor to investigate or verify other issues that may arise. (Doc. No. 612 at 3.)

During an April 2019 Status Conference, Plaintiffs raised concerns over multiple violations of abusive conduct and asked the Court to re-engage the Court Monitor. (June 2019 Order at 20-21.) The Court found that an external review of several locations was necessary to determine whether Defendants have complied with the obligations set forth in the Agreement.[7] (*Id.* at 24.) The Court observed that while it had the authority to

---

[7] Initially, the external review was limited to Minnesota Life Bridge homes—Stratton Lake, Donnelly, and Bromberg's Lake. (June 2019 Order at 27.)

8

appoint Ferleger to conduct the review, it was mindful of Defendants' objection to him.[8] (*Id.* at 25.) The Court stated that it would "continue to stay the Court Monitor's duties for a limited time," provided that Defendants engaged experts to provide independent and objective assurance, advisory, and investigative services regarding the use of restraints. (*Id.* at 26.) An initial report was required by August 1, 2019; however, the Court advised that the need for further investigation may be necessary pending resolution of the dispute on the scope of the Agreement with respect to prohibited restraints. (*Id.* 30-31.) The Court specifically stated, "the dispute about scope on the use of prohibited restraints must be resolved before the Court can confirm whether compliance must be further investigated and reviewed by a Subject Matter Expert or the Court Monitor." (*Id.* at 30.) The Court also expressly reserved the right to expand the review pursuant to the briefing. (*Id.* at 27 n.30.)

The parties were unable to agree on the scope, precipitating the December 2019 Order and the requirement that Defendants conduct an external review. (*See* Doc. Nos. 753, 759.) The Court could have lifted the stay on the Court Monitor to conduct the review; the fact that it permitted the parties to select a mutually agreeable expert to conduct the external review does not in any way negate its authority to require the external review.

---

[8] The Court did not concede that Defendants' objection had any merit, but granted Defendants the option to rely on their own internal processes for conducting external reviews. (June 2019 Order at 24.)

Further, having previously determined that use of an external reviewer to evaluate the use of mechanical restraint at FMHP and AMRTC is appropriate, the Court declines to re-engage in this argument. (*See* Doc. Nos. 220, 236; *see also* Doc. No. 792 ¶¶ 5, 6, Ex. D (demonstrating Defendants' participation in previous evaluation of FMHP and AMRTC).) Similarly, the December 2019 Order specifically held that the use of restraint at FMHP and AMRTC must reflect best practices and reincorporates its analysis here. (*See* December 2019 Order at 12-13.) The Court recognizes that Defendants disagree with its finding, and that Defendants object to being required to show that they are not abusing the use of mechanical restraint against human beings with developmental disabilities, but their arguments do not alter the Court's original analysis. The Court also understands that Defendants object to the external review as a "financial and legal burden of proving" to the Court "that they are not violating the Settlement," and Defendants' position that "the burden is on the [p]laintiff to prove [a] breach." (Def. Memo. at 17-18.) Notwithstanding, it is well-established that reporting is part of the Agreement; the fact that the Court seeks additional reporting is neither novel, nor outside the scope of the Agreement. (*See, e.g.*, Doc. Nos. 136-1, Ex. A (order establishing initial reporting requirement); 545 (order establishing reporting schedule); 707, 737 (orders requiring additional information to determine whether the Court's jurisdiction may equitably end).)

Finally, the Court finds Defendants' due process argument without merit. As discussed above, the Court clearly stated in its June 2019 Order that, "the dispute about scope on the use of prohibited restraints must be resolved before the Court can confirm whether compliance must be further investigated and reviewed by a Subject Matter

Expert or the Court Monitor." (June 2019 Order at 30.) The Court also stated that "[o]nce any disputes regarding scope are resolved, the need for further external investigation and review will be determined," and that following a determination on scope, "the external review of prohibited restraints may be amended".[9] (June 2019 Order at 31, 39.) Furthermore, the June Order was in part precipitated by Plaintiff's April 2019 request for an evidentiary hearing and reappointment of the Court Monitor to address the use of restraint and seclusion at AMRTC and FMHP. (Doc. No. 730 at 9-10, 15 (referencing the Rule 40 modernization and requirement that the use of mechanical restraint at AMRTC and FMHP was subject to "best practices").) Moreover, in Defendants' brief related to the scope of the Agreement with respect to the use of prohibited restraints, Defendants specifically argued that their use of restraint and seclusion at AMRTC and FMHP "represents best practices for similar facilities," and that "best practices" is the proper standard to assess whether its use is appropriate. (Doc. No. 759 at 10, 19-20.) Accordingly, Defendants had ample "opportunity to be heard 'at a meaningful time and in a meaningful manner'" with respect to the issue at hand. *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).)

As the Court stated in its 2017 Denial, "[a]lthough the Eighth Circuit may ultimately reach a different conclusion, the Court finds that Defendants have failed to

---

[9] As stated above, the Court specifically reserved its right to expand the scope of the review pursuant the briefing related to the scope of the Agreement. (June 2019 Order at 27 n.30.)

establish a strong likelihood of success on the merits." (2017 Denial (citing *In re Wholesale Grocery Prods. Antitrust Litig.*, Civ. No. 09-MD-2090, 2016 WL 6246758, at *2 (D. Minn. Oct. 25, 2016) ("As with any appeal, the Eighth Circuit may choose to disagree with this Court's conclusions . . . , but this possibility does not make it *likely* that Defendants will succeed on the merits of their appeal.")).)

### B. Irreparable Harm

The Court also considers whether Defendants will be irreparably harmed absent a stay. *Hilton*, 481 U.S. at 776. As with each factor, the burden is on Defendants to establish that this factor weighs in favor of granting the motion. "[S]imply showing some 'possibility of irreparable injury' fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (citation omitted). To establish this factor, the party seeking a stay "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996).

Defendants assert that they would be irreparably harmed if the Court declines to grant a stay. Defendants emphasize that the effective deprivation of appellate rights constitutes significant irreparable harm. (Def. Memo. at 19-20.) According to Defendants, they will be irreparably harmed by "expend[ing] a substantial amount of taxpayer dollars" before the Eighth Circuit can review the December 2019 Order.[10] (*Id.*

---

[10] Defendants contend that "[t]he December 2019 Order plainly requires a reviewer to spend a significant amount of time reviewing mechanical restraint use at FMHP and AMRTC," and that "the qualifications necessary to conduct such a review are extensive, resulting in significant expense." (Def. Memo. at 20.) To this end, Defendants suggest that that the external review could cost upwards of $60,000. (*Id.*)

12

at 20.) Defendants also contend that the December 2019 Order "encroaches on the management of state settings that serve some of the most vulnerable and challenging populations in Minnesota, a core area of state sovereignty" which also constitutes irreparable harm. (*Id.* at 21.)

Plaintiffs dispute that Defendants have established irreparable harm. Plaintiffs suggest that Defendants have not lost their right to appeal as evidenced by their pending appeal at the Eighth Circuit. (Pl. Opp. at 21.) Plaintiffs also argue that Defendants are liable for the obligations in the Agreement under state law contract principles regardless of the presiding court. (*Id.* at 21.) Finally, Plaintiffs argue that the doctrine of unclean hands should apply to prevent a stay because "[Defendants'] own non-compliance has unnecessarily caused this matter to drag on for years." (*Id.* at 22.)

The Court finds that while Defendants have identified certain expenditures they will incur absent a stay, they have failed to satisfy their burden to show that the harm they will incur related to verifying that their use of mechanical restraint at FMHP and AMRTC reflects best practices is sufficiently great and that there is a clear and present need for equitable relief. *Iowa Utils. Bd.*, 109 F.3d at 425.

The Court is also mindful of Defendants' repeated delays in compliance throughout this litigation's lengthy history that led the Court to require additional reporting and to extend its jurisdiction on multiple occasions. As this Court noted in its 2017 Denial "a court may decline to grant a motion to stay based on claims of administrative and monetary harm where the principal irreparable injury which defendants claim that they will suffer . . . is injury of their own making." (2017 Denial

13

(citing *Karsjens v. Jesson*, Civ. No. 11-3659, 2015 WL 7432333, at *6 (D. Minn. Nov. 23, 2015) (internal quotation marks and citation omitted)).) Here, if Defendants had a history of properly verified reporting on issues that relate to their management of settings that serve some of our most vulnerable and challenging populations in Minnesota, external review may not be necessary.

The Court concludes that Defendants have failed to show that they would be irreparably harmed if the Court declines to grant a stay. Moreover, a stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken*, 556 U.S. at 427 (citation omitted). Even if the Court were to find that Defendants faced some degree of irreparable harm, the Court would decline to grant a stay in this case in light of the Court's view of Defendant's likelihood of success on the merits and the totality of the circumstances.

## C. Injury to Interested Parties

Next, the Court must consider whether issuance of the stay will substantially injure interested parties, including Plaintiffs. *See Hilton*, 481 U.S at 776.

Defendants argue that Plaintiffs will not suffer harm if the Court imposes a stay. Defendants assert that "the obligations imposed on Defendants do not directly accrue to Plaintiffs' benefit," and argue that "the temporary cessation of the Court's December 18 Order will likely have little impact on Plaintiffs whatsoever." (Def. Memo. at 21.) Defendants also contend that Plaintiffs would not suffer harm because "they could not have anticipated the new external reviewer reporting requirements ordered by the Court would ever exist." (*Id.* at 21-22.)

Plaintiffs contend that "there exists a very real danger that if granted a stay," Defendants "will continue [their] delay and noncompliance," may no longer honor Agreement requirements, and could even "roll back agreed upon protections." (Pl. Memo. at 23.) Plaintiffs cite to a "significant backdrop of noncompliance and delay caused by DHS" and urge the Court to avoid additional delay in the delivery of justice pursuant to the parties' Agreement. (*Id.* at 23-24.) Plaintiffs also assert that the risk of injury applies to "other parties interested in the proceeding" and that "there can be no doubt that the vulnerable citizens of Minnesota protected by [the Agreement] are interested in these proceedings and are at grave risk of substantial injury should a stay issue." (*Id.* at 23 n.9.)

The Court finds that this factor also weighs against a stay. Every improper use of restraint poses direct harm to our State's most vulnerable citizens. While it may ultimately prove correct that Defendants' use of restraint at AMRTC and FMHP reflects current best practices, the Court cannot verify this without an external review, and declines to gamble on an issue with such immense possibility for harm. Moreover, it is in Defendants' best interest to conduct the review as quickly as possible. As the Court recently stated, "[a]s soon as the Court receives sufficient evidence that Defendants are in compliance with the Agreement, and that its jurisdiction may come to a just and equitable end, the Court will end its jurisdiction."[11] (Doc. No. 756 at 10.)

---

[11] The Court's jurisdiction is scheduled to end on September 15, 2020; however, it expressly reserved the authority and jurisdiction to order an additional extension of jurisdiction. (June 2019 Order at 38.)

### D. Public Interest

Finally, the Court considers the public interest. *Hilton*, 481 U.S. at 776.

Defendants contend that the obligations imposed under the Court's December 2019 Order "intrude on the State's responsibility to set public policy and administer its own law" and the December 2019 Order "interferes with the State's responsibility of caring for individuals with a disability when it monitors the minutiae of the Department's administration of matters beyond the case itself, which involved the use of restraint at a single DHS-operated facility." (Def. Memo. at 22-23.) Defendants also raise concerns over the separation of powers. (*Id.* at 23.) Finally, Defendants note that the public interest supports imposing a stay where it would prevent public expense and reemphasizes the "substantial expenses" imposed by the December 2019 Order. (*Id.*)

Plaintiffs argue that, "[t]he public interest, in this case, lies in allowing this Court to continue its work in correcting [Defendants'] noncompliance and implementing the Agreement for the benefit of the vulnerable citizens of our state." (Pl. Opp. at 25.) Plaintiffs assert that Defendants' argument with respect to federalism is baseless because they "voluntarily entered into the Agreement, did not object to the Court's approval of the Agreement, the Court Monitor's court-ordered investigation of restraint and seclusion at [FMHP] and [AMRTC], willingly participat[ed] in that investigation, and accepted it, and cannot reasonably suggest it did not recognize its obligations under the Agreement." (Pl. Memo. at 24.) Plaintiffs also characterize Defendants' costs argument as "a stunning display of self-interest and ignorance of the record" that contradicts Defendants' own stated commitment to protect individuals with disabilities. (*Id.* at 25-26.) Finally,

16

Plaintiffs ask the Court to preclude a stay through the application of judicial estoppel and the doctrine of unclean hands. (*Id.* at 28-29.)

The Court finds that the public interest factor is evenly balanced. As the Court stated in its 2017 Denial, "minimizing public expense is a relevant concern when considering this factor." (2017 Denial (citing *James River Flood Control Ass'n v. Watt*, 680 F.2d 543, 544-45 (8th Cir. 1982)).) Declining to stay this matter will require Defendants to engage an expert, incurring public expense. Notwithstanding, the Court continues to have an obligation to ensure that the Agreement, entered into with an aim to improve the lives of individuals with disabilities throughout the state, is implemented fully and without delay. Accordingly, the Court finds that this factor is on balance neutral.

## CONCLUSION

In sum, upon considering the relevant factors, the Court declines to stay this matter pending the resolution of Defendants' appeal. The Court finds that Defendants have failed to persuade the Court that three of the four factors, including the two most important—likelihood of success on the merits and irreparable harm—weigh in their favor. The remaining factor is neutral. Thus, a stay pending appeal is not warranted.

## ORDER

Based upon the presentations and submissions before the Court, and the Court being otherwise duly advised in the premises,

**IT IS HEREBY ORDERED** that Defendants' Motion to Stay Pending Appeal (Doc. No. [784]) is **DENIED**.

Dated: February 4, 2020                     s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge