UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James and Lorie Jensen, as parents, guardians, and next friends of Bradley J. Jensen; James Brinker and Darren Allen, as parents, guardians, and next friends of Thomas M. Allbrink; Elizabeth Jacobs, as parent, guardian, and next friend of Jason R. Jacobs; and others similarly situated, | Civil No. 09-1775 (DWF/BRT) |
| Plaintiffs, | |
| v. | **ORDER** |
| Minnesota Department of Human Services, an agency of the State of Minnesota; Director, Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Clinical Director, the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Douglas Bratvold, individually and as Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; Scott TenNapel, individually and as Clinical Director of the Minnesota Extended Treatment Options, a program of the Minnesota Department of Human Services, an agency of the State of Minnesota; and the State of Minnesota, | |
| Defendants. | |

Shamus P. O'Meara, Esq., and Mark R. Azman, Esq., O'Meara Leer Wagner & Kohl, PA, counsel for Plaintiffs.

Scott H. Ikeda, Aaron Winter, Anthony R. Noss, and Michael N. Leonard Assistant Attorneys General, Minnesota Attorney General's Office, counsel for State Defendants.

**INTRODUCTION**

This matter is before the Court on Defendants' Motion to Stay. (Doc. No. 806.) Plaintiffs oppose Defendants' motion. (Doc. No. 821.) For the reasons set forth below, the Court denies Defendants' motion.

**BACKGROUND**

The factual background for the above-entitled matter is clearly and precisely set forth in the Court's June 17, 2019 Order and is incorporated by reference here. (*See* Doc. No. 737 ("June 2019 Order").) The Court notes particular facts relevant to this Order below.[1]

On December 18, 2019, the Court issued an order in response to the parties' positions regarding the scope of their Stipulated Class Action Settlement Agreement (Doc. No. 136-1 ("Settlement Agreement")) with respect to prohibited restraints and compliance with the Positive Supports Rule.[2] (December 2019 Order.) The Court found that because the Agreement's definition of Facilities does not include the Forensic Mental Health Program ("FMHP") (formerly the Minnesota Security Hospital), or Anoka Metro Regional Treatment Center ("AMRTC"), those locations are not subject to the Agreement's strict prohibition on the use of restraint in all but extreme emergency

---

[1] The Court also supplements the facts as needed.

[2] On March 12, 2014, the Court formally adopted and approved a Comprehensive Plan of Action ("CPA") consisting of 104 evaluation criteria and accompanying actions designed to help direct and measure compliance. (Doc. Nos. 283, 284 ("CPA").) The combination of the Settlement Agreement and CPA is hereinafter referred to as the "Agreement."

situations.  (*Id.* at 11-12.)  Notwithstanding, the Court found that a separate provision of the Agreement requires Defendants to ensure that their use of restraint at FMHP and AMRTC reflects current best practices.  (*Id.* at 12-14.)  Recognizing the very real danger that inappropriate use of restraint poses to some of society's most vulnerable citizens, the Court ordered Defendants to conduct an external review of their use of restraint at FMHP and AMRTC to properly determine whether such use reflects current best practices and satisfies Defendants' obligations under the Agreement.  (*Id.* at 15-16.)

On January 10, 2020, Defendants filed a Notice of Appeal of the Court's December 2019 Order.  (Doc. No. 783.)  On the same day, Defendants filed a Motion to Stay pending appeal.  (Doc. No. 784.)  The Court denied Defendants' motion on February 4, 2020.  (Doc. No. 794 ("February 2020 Denial").)  On February 13, 2020, the Court specifically directed Defendants to engage Dr. Gary LaVigna to conduct the external review.  (Doc. No. 798 ("February 2020 Order").)  Defendants filed a Notice of Appeal of the Court's February 2020 Order on February 25, 2020.  (Doc. No. 804.)  The next day, Defendants filed a motion to stay their obligation to engage Dr. Gary LaVigna pending their appeal.  (Doc. No. 806.)  Plaintiffs contend that Defendants' motion for a stay is an improper motion for reconsideration of the Court's February 2020 Denial.  (Doc. No. 821 at 1.)  The Court agrees that many of Defendants' arguments parrot those which the Court already considered and rejected.

## DISCUSSION

### I. Legal Standard

Pursuant to Federal Rule of Civil Procedure 62(c), a "court may suspend, modify, restore, or grant an injunction" pending the matter's resolution on appeal. *See* Fed. R. Civ. P. 62(c). "A stay is not a matter of right, even if irreparable injury might otherwise result to the appellant. It is an exercise of judicial discretion. The propriety of its issue is dependent upon the circumstances of the particular case." *Scripps-Howard Radio, Inc. v. F.C.C.*, 316 U.S. 4, 10-11 (1942) (citations omitted); *see also Nken v. Holder*, 556 U.S. 418, 433 (2009). A court considers four factors in determining whether to grant a motion to stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also Brady v. Nat'l Football League*, 640 F.3d 785, 789 (8th Cir. 2011). The moving party bears the heavy burden to establish that a stay should be granted in light of these four factors, and "[t]he first two factors . . . are the most critical." *See Nken*, 556 U.S. at 433-34; *see also* 11 Charles Alan Wright, *et al.*, Federal Practice and Procedure § 2904 (3d ed. April 2017 Update) ("[B]ecause the burden of meeting the standard is a heavy one, more commonly stay requests will be found not to meet this standard and will be denied." (footnotes omitted)). "Ultimately, [the court] must consider the relative strength of the four factors, balancing them all." *Brady*, 640 F.3d at 789 (quotation marks and citation omitted).

### A. Likelihood of Success on the Merits

The Court first considers whether Defendants have "made a strong showing that [they are] likely to succeed on the merits." *Hilton*, 481 U.S. at 776. "It is not enough that the chance of success on the merits be better than negligible. . . . [M]ore than a mere possibility of relief is required." *Nken*, 556 U.S. at 434 (quotation marks and citations omitted). The Eighth Circuit has described this factor as "[t]he most important" for the court's consideration. *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998); *see also Brady*, 640 F.3d at 789.

Defendants contend that they are likely to succeed on the merits because: (1) the Agreement contains no authority to require Defendants to pay for the required external review outside of Facilities; and (2) the Court lacks authority to order Defendants to pay for the review. (Doc. No. 808 ("Def. Memo.") at 3-6.)

The Court finds that Defendants have failed to establish a strong likelihood of success on the merits on appeal. As the Court explained in its February 2020 Denial, external review is not a new concept, nor has it been limited to Facilities. The Court declines to re-engage in this argument which it has already considered and rejected.[3] (*See* February 2020 Denial at 6-10.) The Court also notes that the Agreement created a $3,000,000 fund to cover distributions to Class Members, fees and expenses, and established requirements for systems improvements and changes which were intended to benefit present, future, and potential members of the class. (Settlement Agreement

---

[3] The Court incorporates by reference its analysis in the February 2020 Denial. (*See* February 2020 Denial at 6-10.)

Section XIV; *see also* Settlement Agreement ¶ 7 (a State goal is to "extend the application in this Agreement to all state operated locations serving people with developmental disabilities with severe behavioral problems or other conditions that would qualify for admission to METO" or its institutional or community successor.).)

As the Court explained in its March 4, 2020 Order:

> Some of this money was used to pay the Court Appointed Monitor, David Ferleger. (*See e.g.*, Doc. Nos. 159 (appointing Court Monitor and authorizing payment); 160 (establishing process for compensation); 214-215 (invoices).) Citing continued areas of noncompliance, the Court periodically directed Defendants to deposit additional funds in the Court's registry ("Registry") to accommodate expansion of the Court Monitor's role and to fulfill Defendants' obligations under the Agreement. (Doc. Nos. 224, 286.) The Court stated that upon "determining that the Court Monitor's work under its orders has concluded, any balance remaining in the Registry account shall promptly be returned to the Minnesota Department of Human Services." (Doc. No. 224.)
>
> While the Court stayed the Court Monitor's duties in January 2017; it has not yet determined that the Court Monitor's works has concluded. (Doc. No. 612 (reserving the right to re-engage the Court Monitor to investigate or verify other issues that may arise).) In the spring of 2019, the Court found that additional external verification of Defendants' reporting was necessary to verify compliance. (Doc. No. 737 at 24.) The Court observed that while it had the authority to re-engage the Court Monitor to conduct the review, it was mindful of Defendants' objection to the Court Monitor and allowed Defendants to select a different individual to conduct the external review.[4] (*Id.* at 25.)

(Doc. No. 820.) To reiterate, the Court requires additional external verification of Defendants' reporting to verify compliance; the fact that the Court permitted Defendants

---

[4]  The initial external review was limited to Minnesota Life Bridge homes; however, the Court expressly reserved the right to expand the review pursuant to briefing related to the scope of the Agreement. (Doc. No. 737 at 27 n.30.) After briefing, the Court found that an expanded external review was required. (Doc. No. 779.)

to select someone other than David Ferleger to conduct the external review does not negate its authority to require the external review or Defendants obligation to pay for it.

In short, the Court finds that Defendants have failed to establish a strong likelihood of success on the merits.

**B.     Irreparable Harm**

The Court also considers whether Defendants will be irreparably harmed absent a stay. *Hilton*, 481 U.S. at 776. As with each factor, the burden is on Defendants to establish that this factor weighs in favor of granting the motion. "[S]imply showing some 'possibility of irreparable injury' fails to satisfy the second factor." *Nken*, 556 U.S. at 434-35 (citation omitted). To establish this factor, the party seeking a stay "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996).

Defendants assert that they will suffer irreparable harm if the Court declines to grant a stay. (Def. Memo. at 6-8.) In a nearly identical argument to that which the Court considered and rejected in its February 2020 Denial, Defendants contend that effective denial of appellate rights and financial burden constitute significant irreparable harm. (*Id.*) The Court declines to re-engage in this argument which it has already considered and rejected.[5] (*See* February 2020 Denial at 12-14.)

The Court again concludes that Defendants have failed to show that they would be irreparably harmed if the Court declines to grant a stay.

---

[5]     The Court incorporates by reference its analysis in the February 2020 Denial. (*See* February 2020 Denial at 12-14.)

### C. Injury to Interested Parties

Next, the Court must consider whether issuance of the stay will substantially injure interested parties, including Plaintiffs. *See Hilton*, 481 U.S at 776.

In a somewhat mystifying argument with respect to whether issuance of a stay will substantially injure interested parties, Defendants assert that "[i]f the Court believes a review not contemplated by the Settlement Agreement or law is necessary, the Court can pay for that review itself." (Def. Memo. at 8.) Defendants also assert that "the best argument for the lack of articulable harm" is found in the Court's February 2020 Denial "where it acknowledged that it does not know whether State Defendants are actually engaging in the conduct about which it is concerned."[6] (*Id.* (citing February 2020 Denial at 15).)

The Court finds this argument uncompelling. Unfortunately, Defendants' internal reporting has not always been accurate; areas of noncompliance have repeatedly been discovered only upon external review. (*See, e.g.*, Doc. Nos. 236, 327, 347, 374, 388, 414, 604.) Indeed, a 2013 external review of AMRTC and FMHP cited multiple violations related to restraint and seclusion at AMRTC and FMHP. (Doc. No. 236.) While the Court hopes that the 2020 external review of AMRTC and FMHP will verify Defendants' compliance, the Court has no basis to assume that it will. Therefore, the Court "declines

---

[6] The Court stated, "[w]hile it may ultimately prove correct that Defendants' use of restraint at AMRTC and FMHP reflects current best practices, the Court cannot verify this without an external review, and declines to gamble on an issue with such immense possibility for harm." (February 2020 Denial at 15.)

8

to gamble on an issue with such immense possibility of harm." (February 2020 Denial at 15.) Therefore, the Court once again finds that this factor also weighs against a stay.

### D. Public Interest

Finally, the Court considers the public interest. *Hilton*, 481 U.S. at 776.

Defendants contend that staying their obligation to pay for the external review would further the public interest because it will be expensive, and they recently paid $60,000 for a separate external review. (Def. Memo. at 9.) The Court, having already considered a nearly identical argument in its February 2020 Denial, reiterates that while minimizing public expense is a relevant concern, "the Court continues to have an obligation to ensure that the Agreement, entered into with an aim to improve the lives of individuals with disabilities throughout the state, is implemented fully and without delay." (February 2020 Denial at 17.) Therefore, the Court again finds that this factor is evenly balanced.

## CONCLUSION

In sum, upon considering the relevant factors, the Court declines to stay this matter pending the resolution of Defendants' appeal. The Court finds that Defendants have failed to persuade the Court that three of the four factors, including the two most important—likelihood of success on the merits and irreparable harm—weigh in their favor. The remaining factor is neutral. Thus, a stay pending appeal is not warranted.

**ORDER**

Based upon the presentations and submissions before the Court, and the Court being otherwise duly advised in the premises, **IT IS HEREBY ORDERED** that Defendants' Motion to Stay Pending Appeal (Doc. No. [806]) is **DENIED**.

Dated:  March 9, 2020                             s/Donovan W. Frank
                                                                    DONOVAN W. FRANK
                                                                    United States District Judge